## J. SINAI *v.* LOUISVILLE, NEW ORLEANS & TEXAS RAILWAY CO.

1. SURFACE WATER.   *Obstructing flow.   Injury to others.   Railroads.*

   The ancient common law rule that surface water was a common enemy, to be fought against according to one's necessities, when applied to the conditions now existing, under which the right is everywhere granted to corporations to condemn land, must be qualified by the maxim that one must so use his own as not to do unnecessary injury to others. Hence, a corporation building a railroad in a manner which will naturally result in injury to another by obstructing the flow of surface and overflow water, when another method, equally safe, convenient, inexpensive, and not injurious, is rejected, is liable for the consequent injury.

2. SAME.   *Injury to others.   Reasonable precaution.*

   In determining whether a railway company is liable for damage to an adjacent land-owner, caused by its construction of an embankment for its track instead of a trestle, whereby the flow of surface and overflow water is obstructed, consideration should be had of the cost of the embankment, the probable obstruction of the flow of water resulting from the contour of the land, the extent of the probable injury to such land-owner compared with the cost of the embankment, and whether another method, equally safe, useful and inexpensive might have been adopted.

FROM the circuit court of Sharkey county.
HON. JOHN D. GILLAND, Judge.
The case is stated in the opinion.

*McLaurin & McLaurin*, for appellant.

The question is not whether our courts will adopt the doctrine of the civil law as to surface waters, but whether a corporation will be permitted to enter upon and destroy a valuable plantation, or a number of them, with impunity, when it might enjoy its own property to the same extent without injury to others, and when due care and skill in the construction of its road-bed would avoid this injury and

impose no additional expense on the company. The declaration alleges that a trestle could have been built as cheaply as the embankment, and that it would have been as safe and convenient, and it further alleges that the probable harm to plaintiff could readily have been foreseen by the defendant. The decision of this case is of incalculable importance to land-owners in the Delta, in view of the peculiar topography of its lands, where the streams are sluggish and overflows are frequent. If the railroads can by embankments stop the flow of the surface and overflow waters, when trestles are as convenient and safe, they may thus destroy immense bodies of valuable land without any liability to the owners.

Neither under the civil or common law may one collect surface water in artificial channels and discharge it in undue quantities upon the lands of another. *Railroad Co.* v. *Miller*, 68 Miss., 760. There is no difference in principle whether the water is collected in artificial channels or by artificial embankments. The defendant is liable under the allegations of the declaration. See 57 Tex., 48; 59 *Ib.*, 128; 39 Ark., 463; 69 Ga., 396; 14 Conn., 146; 15 *Ib.*, 312; 35 N. H., 569; 54 *Ib.*, 545; 1 Redfield on Railways, 304; 1 Sedgwick on Dam., 207.

The right granted a corporation to enter and appropriate land against the will of the owner is an extraordinary right, and only goes to the extent of allowing the corporation to use it in a proper manner, with due regard for the property of others, and this requires the provision of sufficient outlets for surface water to pass off. 69 Ga., 396; 41 Ill., 502; 49 *Ib.*, 484; 91 *Ib.*, 111; 54 N. H., 545. See also 86 N. Y., 146; 54 Mich., 593; 70 Mo., 362; 16 Ohio St., 344; 78 Ala., 127; 37 Vt., 104; 98 Mass., 428; 134 *Ib.*, 14; 137 *Ib.*, 277; 151 *Ib.*, 181.

*A. J. McLaurin*, on the same.

While there may be no servitude *jure naturæ* imposed upon the lower land for the upper land, there is no right in a

corporation, allowed by law to take the private property for public use without paying for it, to build an embankment for its own use that destroys private property. *Railroad Co.* v. *Chapman*, 39 Ark., 463. There is no material difference whether one's property is taken for a public work, or the erection of the public work destroys the value of the property. We are not contending for the adoption of the rule of the civil law, but for an adaptation of the common law to the conditions now existing. 6 Lawson's Rights & Pr., § 2944; 91 Ill., 500; 74 N. C., 769; 62 Am. Dec., 170; 46 Cal., 346; 15 La., 681; 16 *Ib.*, 151; 26 Pa. St., 407; 68 *Ib.*, 324; 72 Ala., 277; 6 Am. & Eng. Enc. L., 542; 13 Wall., 166.

It is proper to say that if the defendant can legally dam up overflow and surface water within the Delta, more than a million acres of land there may be rendered worthless by it without any liability on its part. The corporation, under its right of eminent domain, does not acquire the right of the proprietor of the land, but, for the public good, it appropriates to its own use the land of the owner, and it must so use it as not to damage the owner, or any one else, unless compensation be made. *Barton* v. *Barbour*, 104 U. S., 126.

*Mayes & Harris*, for appellee.

The sole question is, will this court adopt the common law rule as to surface waters? The common law forms the basis of our jurisprudence. 1 Smed. & M., 569; 42 Miss., 1; 44 *Ib.*, 322; 45 *Ib.*, 402.

There is no pretense that there was any obstruction by defendant of a natural water-course, or that there was any collecting of water and discharging it through artificial channels on the lands of plaintiff. The declaration presents a case merely of retarding the flow of surface water so that it could not pass off plaintiff's land as rapidly as it did before the erection of the embankment. It is clear that if the common law prevails, a land-owner may appropriate to his own use or expel from his land all mere surface water or su-

perficially percolating waters in draining his soil for agricult-
ure, in collecting it for domestic purposes, or for the sole
purpose of depriving an adjoining owner of it. Gould on
Waters, 265. That the common law rule has been adopted
in Mississippi we think is settled. *Alcorn* v. *Sadler,* 66 Miss.,
221. See also Washburn on Easements & Servitude, 489;
Angell on Water-courses, 122.

A railroad corporation duly authorized by law has no other
or different rights in this regard than natural persons. No
right of action arises from a single obstruction of surface
waters. Gould on Water-courses, § 273; 53 Me., 200; 67
*Ib.,* 353; 74 N. C., 227; 2 How. (N. Y.), 633; 52 Wis., 526;
109 Ind., 511; 22 Kan., 765; 60 Mo., 329; 10 Allen, 106; 29
N. Y., 459.

WOODS, J., delivered the opinion of the court.

The cause of action of appellant is stated as follows, in
substance, in the declaration: That Sinai was the owner and
in possession of a valuable plantation in section 21, township
13, range 7, in Issaquena county, in this state, worth the sum
of $20,000; that the plantation was in what is commonly
known as the "Yazoo and Mississippi Delta," where the
lands are almost level, and the channels of the streams shallow
and the flow of their waters sluggish, and the beds incapable
of containing their contents in rainy seasons; that the lands
said to have been damaged in this suit, lie between Deer
creek and Mound bayou, on and near Otter bayou, Mound
bayou being six miles west of Deer creek and two miles
west of Otter bayou, and all flowing on parallel lines in the
same general southerly direction; that the three streams
named are all natural water-courses, and that there is a gen-
tle and gradual downward slope in the earth's surface west-
ward from the west bank of Deer creek, and a gradual
downward slope eastward from the east bank of Mound
bayou; that the lands on Otter bayou were good lands for
agricultural purposes before the action of the appellee in

building the embankment complained of; that just south of and near to the plantation of appellant, the appellee built and constructed, from Deer creek to Mound bayou, an embankment of dirt and other material for a road-bed for a railroad about four or five feet in height; that this embankment, stretching across the slight depression of the surface of the earth between Deer creek and Mound bayou, collected, dammed and threw back on appellant's plantation the rain waters and overflow waters from Otter bayou, which its banks could not hold in rainy seasons, which had theretofore been accustomed to flow, in their natural course, through and down the depression or swale between Deer creek and Otter bayou; that a great part of the rain water that falls on township 13 north of appellant's plantation, and a great part of the rain water that falls on township 14, lying north of township 13, all lying between Deer creek and Otter bayou, is gathered into small bayous, sloughs, depressions and a chain of natural lakes, and conducted to Otter bayou, and that these waters, united to that coming down in the channel of the bayou itself, cause the waters to overflow the banks of Otter bayou, and to flow out of the shallow bayous and depressions of Otter bayou to said embankment, where they are arrested, dammed and thrown back on said plantation, whereas, before said railroad embankment was erected, such overflow and rain waters were accustomed to pass harmlessly through the depressions and lowlands southward to that point, where they fell into Otter bayou lower down; that the said overflow and rain waters had no way of escape, except this southward way through said bayou and the depressions south of said railroad embankment, by which they were conducted into larger water-courses, and ultimately into the Mississippi river; that the lands embraced in said plantation were in cultivation before and at the time said embankment was constructed; that appellee neglected to supply reasonable means of passing said overflow and other waters through said railway embankment, by reason whereof

said waters have been obstructed in their natural and customary flow, have been collected, dammed and thrown back, and said plantation covered with sands, trash and logs, and said waters made to remain on said plantation for an unusually long time, whereby the soil is covered, and .the value of the plantation diminished to the amount of $10,000; that appellee might have prevented all the injury complained of by putting a trestle no higher than said embankment for a short distance, and that said trestle would have been as good, safe and cheap for the railroad as the said embankment, and that appellee was aware of all these things before it built its said road-bed.

To this declaration the railway company interposed its demurrer, averring its non-liability for obstructing the flow of surface water, and, the court sustaining the demurrer, the appellant comes to this court.

The question presented·is resolvable by the application of common law principles to new and changed conditions. At the ancient common law every land-owner fought and fenced against surface water as suited his necessities. It was a common enemy, which the land-holder dealt with according to his own pleasure, for his own protection. But this strict rule had its origin when the soil was used for agricultural purposes. In that primeval day of the law's birth and growth, a railway corporation as a land-owner was undreamed of. Now, with a net-work of railway lands spread all over, the face of the country, we are called to deal, in the application of legal principles, with a condition of affairs not thought of when every man fought surface water to suit his own fancy. Still, then, as now, the rule was that each must so use his own as not to do unnecessary harm to another. Each proprietor has the right to the use and possession of his own soil; each has equality of proprietary rights, and upon each is imposed in organized society, regulated by law, resting on mutual concession, reciprocal duties and correlative obligations. No one, natural or artificial, has the absolute dominion

and unlimited control of his own lands. Blending these harmonious rules of the common law, and adopting them in their flexibility to the new order of society, we shall do no violence to either while we apply both to the case in hand.

A railway corporation is an artificial being, created by the state for the public good. To this end, the artificial creation is clothed with great privileges and powers. It may, and generally does, exercise one of the attributes of sovereignty— to wit, the right of eminent domain. This is wisely permitted to subserve the general welfare—the public, all the, individual members of society, being supposed to be interested in and to be benefited by the attainments of the ends for which the railway corporation is created. But, in the use and exercise of its privileges and powers, we must not assume that the state designed to disturb well-settled, general legal principles, and to absolve its creation from the observance of the same rules of conduct as apply to and govern the natural person. The railway corporation must not recklessly and wilfully use its powers to the injury of the citizen. It must use its privileges in such manner as may be necessary to meet the objects of its creation; but it must do so with reasonable care and skill. It may, by proper expropriation proceedings, take private property for its public use, but it must first make compensation to the owner despoiled, and the owner, as well as any other citizens affected by its construction, has a right to insist that future evils, foreseen as likely to follow a particular method of exercising the powers granted the railway corporation, shall be guarded against, if the same can be conveniently and reasonably done, regard being had to the interests of the corporation as well as of the individual citizen.

If in the execution of chartered rights it shall become necessary to do a particular act in a particular manner, it may safely do so, though evil may result to others; but if the same act may as well be done for the railway's interests in another way, and without hurt to others, reason and justice will require the adoption of the non-hurtful method of exe-

cuting its powers. The execution of its rights in a particular method foreseen to be fraught with peril and injury to others, when another method, equally safe, convenient and useful, is rejected, will subject the corporation to the imputation of wilful negligence.

With railway corporations as with natural persons employed in the same or like work, it must be true that unnecessary and wanton injury may not be done one by another in the use and enjoyment of his proprietary rights. The rule possessing flexibility and adaptability to all conditions likely to arise, is that which guards the right of the land-owner to deal with his own as he will, qualified by the duty imposed upon him to so use his own as not to hurt his neighbor, if that be reasonably within his power. In the case at bar, to reach a right conclusion, we must consider the character and value of construction or embankment; the likely to be foreseen interference with the usual flow of the waters in a region marked with the striking configuration of the Delta, as appears by the averments of the declaration; the extent and amount of the injury done to adjacent land-owners compared with the cost and value of the embankment, and whether any other method of construction, equally safe, convenient and inexpensive might have been adopted.

According to the averments of the declaration, injury to the extent of $10,000 has been done the plantation, when, the evil being easily foreseen, another method of construction, as cheap, as safe, as convenient, was open to the railway company when engaged in the construction of its line. The demurrer should have been overruled, and the railway company required to answer the case thus made against it.

This view is perfectly in accord with that of *Lawrence* v. *Railway Co.*, 71 Eng. Com. Law R., 643, as well as the following American cases: *Shane* v. *Railroad Co.*, 71 Mo., 237; *Thompson* v. *Androscoggin Co.*, 54 N. H., 545; *Gilbert* v. *Savannah, etc., Railroad*, 69 Ga., 396; *Trustees* v. *Spears*, 16 Ind., 441; *Livingston* v. *McDonald*, 21 Iowa, 160; *Gillham* v. *Railroad*

*Co.,* 49 Ill., 484; *Waterman* v. *Railroad Co.,* 30 Vt., 610; *Pflegar* v. *Railroad Co.,* 28 Minn., 510; *Little Rock & Ft. Smith Railway* v. *Chapman,* 39 Ark., 463.

*Reversed and remanded.*