YAZOO & MISSISSIPPI VALLEY RAILROAD CO. *v.* S. C. DAVIS ET AL.

1.  RAILROADS.   *Obstruction to flow of water.   Injury to adjacent lands. Embankment.*

    A railway company, the line of which runs through low lands subject to overflow, has the right to construct embankments necessary to raise the roadbed above periodical floods, and cannot be held liable for damages because of the obstruction which an embankment, made by filling in a trestle, opposes to the drainage of the flood and surface waters, where large and numerous trestles still remain to afford such drainage, no streams are obstructed, and there is no proof either that the road is improperly constructed or that a trestle, at the place in question, would be as safe and economical as the embankment.   *Sinai* v. *Railroad Co.*, 71 Miss., 547, distinguished; *Railroad Co.* v. *Smith*, 72 Miss., 677, cited.

2.  SAME.   *Unprecedented overflows.*

    A railway company is not under a duty to so construct its roadbed as to provide against all except unprecedented overflows, or to preserve adjacent lands from overflows that they were subject to in their natural state.

3.  PAYMENT FOR RIGHT OF WAY.   *Damages included therein.*

    Where a railway company has located and built its road, under a charter authorizing it so to do on condition only that, by contract or under condemnation proceedings, it should compensate the owners of the property taken therefor, the amount paid to a landowner by way of compensation, whether by contract or upon the award of the commissioners in such proceeding, will be held to include all such damage from overflow as may be incidental to the proper construction and maintenance of the road.

FROM the circuit court of Leflore county.

HON. R. W. WILLIAMSON, Judge.

The opinion states the substance of the evidence. The following instructions, some of which are not numbered, were given for plaintiff:

"If the jury find for the plaintiff, the form of their verdict will be, we, the jury, find for plaintiff, and assess their damages at ———— dollars."

"3. If the jury believe, from the evidence, that defendant carelessly obstructed the flow of water, flowing in natural water courses, so as to cause the same to overflow plaintiffs' land to their damage, then the jury will find for the plaintiffs, and assess their damages at whatever amount may be established by the evidence."

"If the jury believe, from the evidence in the case, that the waters of Big Sand and Teocalia creeks and the overflow waters of Yalobusha river, flowing through or near to plaintiffs' land, found harmless exit and egress through certain defined and natural water courses before the filling of the openings in defendant's roadbed, and that defendant neglected and improperly obstructed such water courses, and that, by reason of such obstruction, plaintiffs' land was damaged, defendant would be responsible for such damages as evidence shows plaintiff suffered thereby."

"The court instructs the jury that while the defendant corporation has the right to the use and possession of its own soil, including the right of way, yet, if in the construction or repair of its roadbed, it adopts a method foreseen to be fraught with peril and injury to others, when any other method, equally safe, convenient and useful, is available, and injury thereby results to another, the law imputes negligence and carelessness to the corporation."

The following instructions were given for defendant:

"3. The court instructs the jury that the burden of proof is on plaintiffs to make out their case by a preponderance of tes-

timony, and, unless this is done, then the jury will find for the defendant.''

'' 6. The court instructs the jury that if they believe, from the evidence, that the plaintiffs' land is overflowed by surface water or overflow waters from the streams adjacent to or near by said land, without reference to said railroad embankment, then the jury will find for the defendant.''

'' 6. [This number repeated.] The court instructs the jury that if they believe, from the evidence, that the land of defendant is not injured on account of the filling in of said trestles, then the jury will find for the defendant.''

'' 7. The court instructs the jury that damage to plaintiffs' land is not to be presumed, but must be proven, and unless plaintiffs show, by the preponderance of testimony, that said land is injured as charged in plaintiffs' declaration, then the jury will find for the defendant.''

'' 8. The court instructs the jury that unless they believe, from a preponderance of the evidence, that the damage done to the Davis land by overflow waters, if any damage is done, has been caused by the filling of the trestles as shown by the evidence, then they must find for the defendant.''

'' 9. The court instructs the jury that if they find for the defendant, their verdict will be, we, the jury, find for the defendant.''

The court refused to give the following instructions for defendant:

'' 1. The court instructs the jury that if they believe, from the evidence, that the openings in defendant's railroad are sufficient to carry off all ordinary overflows from Big Sand and Teoc creeks, then the jury will find for the defendant.''

'' 6. The court instructs the jury that the defendant is not liable to any damage that plaintiffs may have sustained by reason of the overflow and surface waters from Yalobusha river, and if the evidence shows that said lands are injured by said waters from the Yalobusha river, then the jury will find for the defendant.''

"The court instructs the jury to find for the defendant."

Defendant asked the court to give the following instruction:

"4. The court also instructs the jury that if they believe, from the evidence, that the openings in defendant's railroad are sufficient to carry off the water of all ordinary overflows, then the jury will find for the defendant." The court modified this instruction as follows: "The court instructs the jury that if they believe, from the evidence, that the openings in defendant's railroad to carry off the waters of all overflows, except such as are unprecedented, then the jury will find for the defendant."

Defendant then asked the following instruction, which is not numbered:

"The court instructs the jury that if they believe, from the evidence, that the lands of plaintiff are damaged by the overflow of Yalobusha river and other waters combined, and that the openings in said railroad are sufficient to carry off said water, when it begins to fall, then the jury will find for the defendant."

This instruction was modified as follows:

"The court instructs the jury that if they believe, from the evidence, that the lands of the plaintiff are damaged by the overflow of Yalobusha river and other waters combined, and that the openings in the railroad are sufficient to carry off said water, then the jury will find for the defendant."

Defendant excepted to the court's action in refusing and modifying its instructions.

There was a verdict and judgment for plaintiffs for $416.66.

Defendant's motion for new trial was overruled, and it appealed.

*Mayes & Harris*, for appellant.

None of the witnesses speak definitely as to the amount of the additional overflow which was caused by the filling in of the trestles. But it is distinctly shown, by the witnesses for the plaintiff, that the land has always been subject to overflow,

more or less, the extent being greater sometimes than at others, and the water remaining on the land longer sometimes than at others, owing to the extent and duration of the rainfall. Special attention of the court is called to the uncontradicted testimony of the defendant's witnesses, that when the Yalobusha river is up, the water flows from the Yalobusha, through the openings in the railroad track, over the land in question. In other words, instead of the water running west through the railroad into the Yalobusha, that the Yalobusha backs the water up so that it runs through these trestles east, and that the water will stay upon the land as long as the Yalobusha remains up. This would naturally follow from the topography of the country. So, when an unusually rainy season comes, and the Yalobusha gets up so that it backs the water up Big Sand and Teoc and up the bayous, there is no way for the water to get out, and the land would be overflowed just the same, whether the railroad was there or not; and the testimony in the case is all to the effect that it is only under these circumstances that the whole of the land is overflowed, and that these conditions are likely to arise at any time, and cannot be prevented by the construction of the railroad, and would not be prevented, even if the railroad was built entirely on trestles all across the land. We think, under the principles of law as settled by this court in the case of *Kansas City, Memphis & Birmingham Railroad Co.* v. *Smith*, 72 Miss., 677, that this is nothing but a case in which, owing to the peculiar topography of the country and the construction of the railroad, it is probably true that in some seasons, in unusually heavy rainfalls, more water comes to the plaintiff's land than probably would ordinarily come if the railroad was not there. This is as much as can be claimed from the testimony in the case. The case is very similar, if not on all fours, with the case of *Kansas City, Memphis & Birmingham Railroad Co.* v. *Smith*, *supra*, and we have, therefore, assigned for error the refusal of the court to give the peremptory instruction for defendant.

Instruction number one, for defendant, should have been given.

The court will see, from the testimony for plaintiff and the declaration, the cause of complaint was that the openings were insufficient to carry off the waters from the overflow of Big Sand and Teoc creeks. The very groundwork of plaintiff's case was this fact. His grievance was that the bayous—namely, Stump bayou and others—which were crossed by the railroad track, were natural drains for the overflow from Big Sand and Teoc creeks, and the railroad company filling in its trestles over these bayous had rendered them insufficient to carry off these waters. All the testimony in the case upon which plaintiff could rely was that these bayous were to carry off the overflow from these two creeks. If they were sufficient, that was all that was necessary, and the company was not required to provide openings to carry off waters from extraordinary or unprecedented overflows, and if they were sufficient to carry off all ordinary overflows from Big Sand and Teoc creeks, the railroad company had discharged its full duty to the plaintiff. Instruction number six should have been given. There is testimony in the case that the damage to plaintiff's land was not caused by any insufficiency in these openings, but was caused by waters from Yalobusha river, which rises suddenly and gets out of its banks and remains high for a long time, and it was not claimed that these openings were intended to carry off the waters of the Yalobusha, because these waters drained into that river, and that river was the outlet into which these drains emptied, and, consequently, if the damage which plaintiff suffered was from overflow of the surface water of the Yalobusha, he was not entitled to recover.

The action of the court in modifying the fourth instruction was erroneous. The rule in reference to the right of an adjoining landowner to recover for an injury caused by a dam or obstruction of the water, is laid down in 28 Am. & Eng. Enc. L., vol. 28, p. 961, as follows: "If the injury to an ad-

joining owner is caused by a dam, which, though not affecting the ordinary level of the water on the owner's land, yet on the occasion of an ordinary and expected freshet, or even unusual rise in the water, causes an overflow, the dam owner is liable; but if the injury is in consequence of an extraordinary flood or one which could not reasonably have been expected, or results from other unforeseen cause, although not necessarily unprecedented, no liability attaches to the owner of the dam.''

''A railroad company is not liable for damages for culpable negligence when the injury results from the failure of the company to provide, in the construction of its roadbed, against extraordinary floods.'' 8 Am. & Eng. Enc. L., p. 70.

'' There is no liability on the railroad company for not constructing culverts so as to pass extraordinary floods.'' *Railroad Co.* v. *Gilleylan*, 56 Penn. St., 454; 56 Penn. St., 53. The court will find on page 70 of 8 Am. & Eng. Enc. L., a large collection of cases relating to this subject, which sustain our position as to this instruction. But it is not necessary to go out of this state for authority in the position we insist upon. In the case of *Kansas City, Memphis & Birmingham Railroad Co.* v. *Smith, supra,* the court held that the overflow waters of a stream are not surface waters, but, at the same time, they are not to be treated as being part of the stream, as under the English rule, but the railroad company, as well as others owning land in the valleys subject to overflow, has a right to reasonably protect itself against this by a construction, and that the railroad company would not be liable in damages for failure to provide against excessive and unusual floods, and that a landowner is not entitled to recover damages for overflow of land because the embankment of a railroad company, to some extent, increases the depth of the water on his land, which would have been overflowed notwithstanding the embankment had not been made.

We insist that there is no authority to support the instruction as modified. How is a railroad company to provide

against all overflows, and such ordinary overflows would be determined by the conditions of the country through which the railroad runs.   It is not responsible for extraordinary freshets, such as might not be reasonably expected, although the freshet might not be unprecedented.   Under this instruction, as modified, the railroad company would be compelled to provide against any overflow, however extraordinary, if a like overflow could be shown to have occurred at any time.

In the case of *Kansas City, Memphis & Birmingham Railroad Co.* v. *Smith,* above referred to, the court went to the very bottom of the subject, and referred the matter to the underlying principle to which it should be referred.   The railroad company stands just as any other landowner with reference to the obstruction of water.   The underlying doctrine is based on the maxim, *sic utere tuo ut alienum non lœdas.*

The company has to keep in mind several duties which rest upon it.   1. The paramount and overshadowing duty which it owes to the public as carrier of passengers and freight.   It has to look to the proper performance of these duties.   With regard to passengers, it is, by law, required to exercise the highest degree of care for their safety, and it has to conduct its business with reference to this duty.   It must construct its roadbed and track with reference to this duty.   2. The railroad company is under a duty to respect the rights of adjoining landowners, but at the same time the rights of these neighbors are, in the same degree, to be viewed with reference to the rights of the railroad company.   The railroad company is under a duty to those persons who have put their money into it as a legitimate and lawful enterprise, and its business must be conducted with reference to these.   When a railroad company has constructed its roadbed with reference to the ordinary conditions which surround it, it has discharged its full duty to its neighbors and to the adjoining landowner.   One is not liable to his neighbor merely because, in the exercise of his legitimate rights in reference to the use of his property, he has ren-

dered his neighbor's property less valuable, or has caused him some damage, and so long as a railroad company has kept within reasonable limits in the use of its property, it has done all that the law requires, and the fact that the property of an adjoining landowner may have, to some extent, been damaged does not give him a right to recover of the railroad. It is simply a case of *damnum absque injuria.* *Sinai* v. *Railroad Co.*, 71 Miss., at p. 553.

The defendant asked the following instruction: "The court instructs the jury, if they believe, from the evidence, that the lands of the plaintiff are damaged by the overflow of the Yalobusha and other waters combined, and that the openings of the railroad are sufficient to carry off such water, when it begins to fall, they will find for defendant." This instruction was modified by striking out, "when it begins to fall." This modification was not in accordance with the views of the court in the case of *Kansas City, Memphis & Birmingham Railroad Co.* v. *Smith, supra.* The court distinctly stated, in that case, that the mere fact that the construction of a railroad has increased the depth of water on land which was already subject to overflow, would not entitle the landowner to damages. If the openings provided were sufficient to carry off the water when it began to fall, that was all that was necessary. But, under the instruction as modified, the railroad company was required to so construct its track that all the water would pass unimpeded in any way, without reference to the question as to whether the land was naturally subject to overflow or not. The railroad company was not required to provide for carrying off water which overflowed plaintiff's land before it began to fall. All that was required was, that it provide openings sufficient to carry off the water when it began to fall.

The last instruction for the plaintiff should not have been given. The instruction was probably predicated of the language of this court in the case of *Sinai* v. *Railroad Co.*, 71 Miss., 547. It must be remembered that in the Sinai case,

the declaration averred that the injury to the adjacent land was easily to be foreseen, and that a method of construction, as cheap, as safe and as convenient, was open to the railroad company, as the one which it had adopted. The objection to the instruction as given is, that it leaves out of view altogether the question of the expense of the other method to be adopted, and tells the jury that the railroad company is guilty of negligence if there is any other method equally safe, convenient and useful. There might be many methods equally safe, convenient and useful, but the expense attending the adoption of that method would be such that the law would not impose upon the railroad the duty of adopting it, and could not impute to it negligence if it did not adopt it. In the Sinai case the court expressly counts upon the expense of the two methods, and holds that the railroad company may lawfully use its track, even though it may work injury to others in so doing. The court expressly passes upon the question of expense of the different methods to be adopted by the railroad company, and does not require the railroad company to adopt any other method, regardless of expense, which would save the landowner from damage.

*Rush & Gardner*, on the same side,

Filed a lengthy brief reviewing the evidence, to show that the declaration was not sustained by it, and that the peremptory instruction asked by defendant should have been given—citing the following authorities: *Kansas City, Memphis & Birmingham Railroad Co. v. Smith*, 72 Miss., 677; 49 Iowa, 378; 34 Am. & Eng. R. R. Cases, 143; 65 Texas, 512; 96 Pa. St., 65; 2 Am. & Eng. R. R. Cases, 166; 15 South. Rep., 177; 53 Texas, 46; and 3 Am. & Eng. R. R. Cases, 197.

*Coleman & Summerville*, for appellees.

The declaration stated a good case under *Sinai v. Railway Co.*, 71 Miss., 547. Instructions one and six, asked by de-

fendant, are based upon the case of *Railroad Co.* v. *Smith,* 72
Miss., 677. No point of likeness between these cases can be
shown. Here the waters came out of Yalobusha river up the
creeks, and, through low lands and regularly defined channels,
back into the river, before the filling of the trestles; now the
channels are obstructed and the waters are thrown back upon
the land. We contend that these are not to be regarded as
surface waters, but, even if surface waters, the rights of liti-
gants are to be determined by the principle announced in *Sinai*
v. *Railroad Co., supra.* The modification of instruction num-
ber four was not erroneous. Defendant must provide against
such floods as have occurred, for, in the nature of things, they
may again happen; where such floods do not occur ordinarily,
but do sometimes occur—where there are precedents—such con-
tingencies must be provided against. The extraordinary, the
exceptional, the unexpected happenings, are synonymous with
the unprecedented events. But there is nothing in the record
that shows that the floods which injured these lands were any-
thing but ordinary, not exceptional and unexpected, and that
was the issue submitted to the jury, and defendant was not
prejudiced by it. All the evidence was directed to the issue
whether or not the openings were sufficient to carry off the
ordinary overflows. Instructions numbers six and eight, given
for defendant, cure any error that might be asserted as to in-
struction number three for plaintiff. The first instruction for
plaintiff is taken from the language employed in *Sinai* v. *Rail-
road Co.* If it does not, by its terms, limit the recovery to
damage suffered by reason of the filling in of the trestles, this
error is cured by instructions six and eight for defendant.

COOPER, C. J., delivered the opinion of the court.

In *Sinai* v. *Railroad Co.,* 71 Miss., 547, we held that, un-
der circumstances, a railroad company, whose roadbed ob-
structed surface water, and threw it back upon the lands of an
adjoining owner, would be liable to him for the damages thereby

inflicted.    In *Railroad Co.* v. *Smith*, 72 Miss., 677, we also
held that, under some circumstances, a railroad company would
not be liable to an adjoining owner for obstructing the flood
waters of a stream, which were flowing in an unbroken current
along .the course of the stream, and which would, ordinarily,
under the rules of the common law, be considered and dealt
with as a part of the stream.

We need not state the facts of those cases, nor repeat at
length what was therein said of the legal principles on which
the decisions rest.

In the present appeal the facts are substantially these:   The
appellees own a tract of land near the junction of Big Sand
creek and Yalobusha river; the river flows from the northeast
to the southwest, and the general course of the appellant's
road is parallel with the river, and from a mile to a mile and a
half east thereof; Big Sand creek comes in from the southeast,
flowing to the northwest, until near the appellees'. land, when
it is turned to the northeast, and, after passing a mile or more
in that direction, turns to the north, and then, running nearly
west, empties into the river; after leaving the lands of ap-
pellees, and before reaching the river, Big Sand creek receives
the waters of Teoc creek, a stream flowing from southeast to
northwest.   In the irregular parallelogram, between the river
and the creek, the roadbed of the defendant runs, at a distance
of a mile or more from the river, and of a half mile, more or
less, from the creek.   Running out from the Big Sand creek,
and in the direction of the river at its nearest points, are sev-
eral bayous, with clearly defined, but not deep, channels.
These bayous continue as such beyond the line of the railroad,
and some of them—possibly all—lose their character, and are
merged into the basin east of the river.   When the waters of
the creek are high and those of the river are low, the waters
from the creek and the overflowing waters and surface waters,
run down through these bayous to or towards the river; but

when the waters of the river are at flood, they run eastward, through the bayous, to the creek.

This was the condition of things before the railroad was built, and from this it appears that the lands of the plaintiffs, situated between the creek and the river, are in a sort of basin, which have, to a greater or less degree, been always subject to overflow, the waters of the Big Sand creek overflowing them from east to west, when the river was low and the creek high, and the waters from the river overflowing them from west to east when the river was at flood. East of the creek are other lands of the plaintiffs, and damages in this action are sought for injury done to the lands both east and west of the creek.

When the railroad was constructed, in the year 1886, much of it, for the first mile or two south of the point where it crossed Big Sand creek, was built upon trestles. In the year 1892 the company filled up a large portion of these trestles with earth, forming, where filled, a solid roadbed, but, as appears from a map used on the trial of the cause and made a part of this record, there yet remain about eighteen hundred feet of trestle work (including the bridge of three hundred feet across the Big Sand) from the point where the road crosses the creek to the first bayou south of and adjoining plaintiffs' land, and of these trestles, nearly a thousand feet are over the bayous and along the low lands of the plaintiffs' farm.

The plaintiffs allege that their "said lands are situated in what is known as the Yazoo and Mississippi delta, and are almost level; that there are occasional elevations into ridges of slight elevation, and occasional depressions of slight extent, which latter, at certain seasons, overflowed; that the streams passing through and near to said lands are very shallow, and their waters flow sluggishly; that the beds and banks of the streams are incapable of containing the waters in the rainy seasons, but they are bordered by low or overflowed lands, which, at such times, assist in carrying off the excess; that all of the small streams, bayous, sloughs and creeks draining the

said lands, flow in a westerly direction and empty into the Yalo-
busha river, which river flows in a southwesterly direction, but
with a winding course, about two miles distant from their lands,
said lands being about three or four miles distant from what is
known as the 'Hills,' where the surface of the earth rises
abruptly into hills of great elevations and dimensions; that
there is a gradual slope in the earth's surface westward from
the foot of the hills to the Yalobusha river, and the usual and
ordinary waters, passing through and near to the lands aforesaid
from the east, found egress in a harmless course, by the two
creeks, Big Sand and Teoc, into said river; that, in the rainy
season, which annually occurs in the spring of the year, as well
as at other times of heavy rainfalls, quantities of water rush
down from the high lands, and, overflowing the two creeks,
passed onto the adjacent low or overflowed lands, and were
conveyed from off the lands of the plaintiffs by four streams or
bayous, to wit: Sand bayou and a prong of Sand bayou, Stump
bayou and a prong of Stump bayou.''

The declaration further alleges that, when the railroad was
built, trestles of sufficient sizes were left for the passage of the
waters, but that the defendant, without due regard to the rights
of the plaintiff, in the year 1892, filled up a large part of the
trestles, obstructed the bayous, and left insufficient escape for
the waters, thus throwing them back upon plaintiffs' lands, in-
creasing the depth of water upon the lands that were accus-
tomed to overflow, overflowing other lands, and materially pro-
longing the period for which the overflows remained on the
lands.

Stating the case as proved most favorably for the plain-
tiffs, it may be said that their property consists of what is
known as ''low lands,'' subject to overflow in great part by
ordinary floods, with a few ridges of not great extent, parts of
which were above ordinary overflows, and possibly a small
part not subject to overflow even in exceptionally high water;
that the construction of the road, and the filling in of the tres-

tles has, to some extent, deepened the overflows from the surface water and the waters from Big Sand creek, where the Yalobusha river is low, and subjected to overflow on the whole body of the land, from thirty to one hundred acres, which, but for the roadway, might have been brought into cultivation; that no additional land is subject to overflow from the Yalobusha river, but that overflows from that river, as well as from the Big Sand, are somewhat prolonged in time when they do occur.    There is no evidence that the road is improperly constructed, except as may be inferred from the foregoing facts; and there is nothing to show that to construct and maintain trestles would be as economical as to make the roadbed, or that, when constructed, they would form as safe or proper roadway.    It is affirmatively shown that the trestles or bridges at the creek, and at all of the bayous except one, are of far greater capacity than the bayous and the creek, and it is not shown that any appreciable or ascertainable injury has resulted from obstructing that bayou, the water flowing through that having been turned southward along the railroad, and emptying now into Stump bayou.

The peremptory instruction prayed by the defendant was properly refused, for the reason that whether this obstructed bayou was a water course was, under the evidence, a question for the jury; and, if it was, the defendant was liable to the plaintiffs for such injury as they sustained by its obstruction, and, if no injury could be proved, to nominal damages. *Chapman* v. *Copeland*, 55 Miss., 476.    In all other respects the course of the trial—the instructions given and refused—proceeded along radically erroneous lines.

The fundamental error which colored and controlled the whole case was that the defendant company was under the duty of so constructing its roadway as to afford exit for all except "unprecedented" overflows, and in treating the filling of its trestles on the low lands as obstructions of a water course.    Nature failed to afford sufficient exits for the waters which are the

source of the plaintiffs' injury, and it is not the law that the defendant was under the duty of so constructing· its roadway as to preserve the land of the plaintiffs from all injury by reason of water to which it would not have been subject in its natural state.    The plaintiffs' farm is so situated as to be subject to a sort of ebb and flow inundation—sometimes from the eastern waters of Big Sand creek, at others from the western waters of the Yalobusha river.    Through this basin the company, either by contract or condemnation, obtained a right to locate its roadway.    Power was conferred upon it by the legislature to build the road on condition only that, by contract or condemnation proceedings, it should compensate the owners whose property was to be taken.    This it has done, and is the owner of the land, with the right to use it as such for the legitimate purposes for which it was secured.    For all injuries flowing from the lawful and proper construction of its roadway, it has already paid.

In condemnation proceedings all special damages, present and prospective, to the owners of land, resulting or to result from properly constructing and maintaining its road, constitute, as to such owner, a single indivisible cause of action, and it is conclusively presumed that the commissioners, in making their award in cases of condemnation, have considered and awarded damages for all such injuries; and, if the way has been secured by contract with the owner, that he has demanded and received full compensation therefor.    And if it may reasonably be supposed that a proper construction of the road will subject adjoining land to overflow, or obstruct its drainage, such damages should be estimated and allowed for.    *Sullivan* v. *Supervisors*, 58 Miss., 790; *Commissioners* v. *Harkleroads*, 62 Miss., 807; *Richardson* v. *Levee Commissioners*, 68 Miss., 539; *Railway Co.* v. *Wachter*, 123 Ill., 440; *Barnes* v. *Railway Co.*, 65 Mich., 251; *Bell* v. *Railway Co.*, 101 N. C., 21; *Moss* v. *Railway Co.*, 85 Mo., 86.

It is evident that, to construct a road on lands situated as

were the plaintiffs, would inevitably, to some extent, obstruct the body of vagrant water, composed of both overflow and surface water, to which, in a state of nature, the plaintiffs' lands were subject. The roadway, except where it crosses the defined banks of the streams and bayous, is in no proper sense within a water course. The alluvial lands of the Yazoo and Mississippi Delta were all built up by the deposits from the rivers. In a state of nature it is all subject to overflow, and if the roads in that country are to be so constructed as to preserve the nearest possible approach to a natural condition of the waters, they must be placed upon trestles from one end of the valley to the other. We withdraw nothing of what we said in *Sinai* v. *Railroad Co.*, 71 Miss., 547. A company having a right to construct its railroad may not, in disregard of the rights of adjoining proprietors, so construct its roadbed as to destroy the value of the lands of third persons, even though the injury be occasioned by turning back surface water upon such lands, if, with due regard to the duty it owes to the public, and in the reasonable use of its own property, and at no undue expense, it can, by putting in trestles, culverts, or other openings, provide a way through which such water may safely be allowed to escape. But that is not this case. On the contrary, to require the company to refrain from building its roadway by putting up embankments necessary to raise its line above the periodical floods, when large and numerous trestles are provided to give vent to the surrounding waters, would be to subordinate its rights of property to the unfounded demands of the adjoining owner, who has already received full compensation for the injury of which he complains.

*The judgment is reversed and cause remanded.*