## HOLMAN *v.* RICHARDSON.

[72 South. 921.]

1. WATERS AND WATER COURSES. *Surface waters. Right to deflect. Drainage. Prescription. Knowledge.*

   The common-law rule which obtains in Mississippi, is that surface water is a common enemy which every proprietor may fight as he deems best, regardless of its effect upon other proprietors, and that accordingly the lower proprietor may take any measures necessary for the protection of his property, although the result is to throw the water back upon the land of an adjoining proprietor.

2. SAME.

   Where surface water has been accustomed to gather and flow along a well-defined channel which by frequent running, it has worn into the soil, it may not be obstructed to the injury of the dominant proprietor and a lower proprietor must protect himself with due regard to the rights of the upper proprietor and so as not to injure him unnecessarily, and is liable for any injury due to his recklessness or negligence.

3. SURFACE WATER. *Drainage. Prescription. Knowledge.*

The right of drainage across the land of another is not gained by prescription though continued for twelve years, where such drainage was by tile drainage and was unknown to the owner of the lower land.

APPEAL from the chancery court on Noxubee county. HON. J. F. McCOOL, Chancellor.

Bill by Geo. Richardson against Mrs. M. E. Holman. From a decree for complainant, defendant appeals.

The facts are fully stated in the opinion of the court.

*A. T. Dent* and *Meville, Stone & Currie,* for appellant.

*W. W. Magruder,* for appellee.

POTTER, J. delivered the opinion of the court.

The appellee, George Richardson, was complainant in the court below, and the appellant, Mrs. M. E. Holman, was defendant there. Mr. Richardson and Mrs. Holman lived on adjoining lots in the city of Macon. Their lots are so situated that large quantities of surface water are gathered together during rains on Mr. Richardson's premises and flow over the lot of Mrs. Holman, to her annoyance, inconvenience, and detriment. To stop the flow of this surface water, Mrs. Holman had begun the erection of a brick and cement wall between her property and the property of Mr. Richardson along their entire property line. The result of the building of this wall as contemplated would have been to confine the surface water falling on Mr. Richardson's lot on his own premises, unless he provided another outlet for same. Twelve years prior to the time when Mrs. Holman began the building of the said wall, Mr. Richardson had constructed an underground tile drain across his lot and ending at the property line between himself and Mrs. Holman; and this tile drain emptied into a ditch running through Mrs. Holman's lot. This

tile drain gathered the surface water on the Richardson lot and projected it onto the lands of Mrs. Holman, and the same was carried off by the said ditch through Mrs. Holman's land. Mrs. Holman in beginning the erection of the said brick and cement wall had stopped up the tile drain at the point where it emptied in the ditch on her land, and thus turned the water flowing through same from the Richardson lot back on that lot. The tile drain in question was put down twelve years previous to the time when Mrs. Holman began to erect her wall and stop the flow of water through same. The right to continue to maintain an outlet through this tile drain and the ditch through Mrs. Holman's premises is claimed by the appellee by prescription. Mrs. Holman testified, however, that she did not know of the existence of such tile drain, except for two or three years, and no one testifies that she did know of the existence of such drain for the statutory period. Mrs. Holman's property has been greatly damaged by the flow of surface water from Mr. Richardson's lot, and if she is permitted to build the wall in question and stop the flow of water through the tile drain above mentioned, Mr. Richardson's property in turn will be greatly damaged. It appears, however, from the evidence that with the expenditure of a comparatively small amount of money, Mr. Richardson can drain his property by the way of drains constructed on his own land. On the prayer of Mr. Richardson an injunction was issued, restraining Mrs. Holman from erecting the wall she had started to build between the two properties, and upon final hearing the chancellor made the injunction perpetual. From this decree perpetuating the injunction, Mrs. Holman appeals to this court.

Two questions are presented for determination in this case: First, whether, because Mrs. Holman's lot is on lower land than Mr. Richardson's, she must keep it so unobstructed as to serve as an outlet for the surface water on the upper lot; second, has Mr. Richard-

son acquired an easement by prescription to drain his property through the ditch running through Mrs. Holman's property?

The first question to be determined depends upon whether the rights of adjoining owners in the flowage of water are to be ascertained and determined in this state by the common-law rule or the civil-law rule.

"The rule of the civil law, which has been adopted in a number of jurisdictions, is that as between owners of higher and lower ground, the upper proprietor has an easement to have surface water flow naturally from his land onto the land of the lower proprietor, which is subject to a corresponding servitude, and hence the lower proprietor has not the right to obstruct its flow and cast the water back upon the land above; but this applies only as to water arising from natural causes, as from the falling of rain or the melting of snow, and water arising from springs and draining off without a defined channel."

The rule of the common law "is that surface water is a common enemy which every proprietor may fight as he deems best, regardless of its effect upon other proprietors, and that accordingly the lower proprietor may take any measures necessary for the protection of his property, although the result is to throw the water back upon the land of an adjoining proprietor; although it has been held where surface water has been accustomed to gather and flow along a well-defined channel, which by frequent running it has worn into the soil, it may not be obstructed to the injury of the dominant proprietor, and that a lower proprietor must protect himself with due regard to the rights of the upper proprietor, and so as not to injure him unnecessarily, and is liable for any injury due to his recklessness or negligence." 40 Cyc. 640—643.

We have no hesitancy in declaring the common-law rule prevails in this state. In the case of *Alcorn* v. *Sadler,* 66 Miss. 229, 5 So. 695, Judge CAMPBELL, in

delivering the opinion of the court, gave recognition to the rule when he said:

"It matters not that the water comes from the surface of adjacent lands owned by Sadler. He may arrest its flow over his land and divert it before it gets to rest in the reservoir or lake, or whatever the body of water may be called," etc.

In the case of *Sinai v. Railroad Co.,* 71 Miss. 547, 14 So. 87, this court based its opinion on the common-law rule, and applied the common-law rule in that case, modifying it, however, to suit new conditions and a new situation, as the rules of the common law have ever been altered and modified to meet new conditions and to keep pace with the growth of the country and progress of civilization. In that case the court said:

"The question presented is resolvable by the application of common-law principles to new and changed conditions. At the ancient common law every land owner fought and fenced against surface water as suited his necessities. It was a common enemy, which the landholder dealt with according to his own pleasure, for his own protection. But this strict rule had its origin when the soil was used for agricultural purposes. In that primeval day of the law's birth and growth a railway corporation as a landowner was undreamed of. Now, with a network of railway lands spread all over the face of the country, we are called to deal with, in the application of legal principles, with a condition of affairs not thought of when every man fought surface water to suit his own fancy. Still, then, as now, the rule was that each must so use his own as not to do unnecessary harm to another. Each proprietor has the right to the use and possession of his own soil; each has equality of proprietary rights, and upon each is imposed, in organized society, regulated by law, resting on mutual concession, reciprocal duties and correlative obligations. No one, naturally or artificial, has the absolute dominion and unlimited control of his

·own lands. Blending these harmonious rules of the ·common law, and adopting them in their flexibility to the new order of society, we shall do no violence to ·either while we apply both to the case in hand.''

And upon this reasoning the court held that a railroad ·company, constructing its roadbed in a manner which will naturally result in injury to another by obstructing the flow of surface and overflow water, where another method equally safe, convenient, inexpensive, and not injurious is rejected, is liable for the consequent injury.

As to whether or not Mr. Richardson has acquired a title by prescription to drain his lot through the tile drain and ditch above mentioned, we are of the opinion that, even though such right as he claims may be acquired by prescription, the matter is not presented in this case; for there is no testimony to prove that Mrs. Holman had knowledge of the existence of this tile drain for the statutory period.

The injunction is therefore dissolved, and complainant's bill dismissed.

*Dismissed.*