## Alabama & Mississippi Railroad Company v. William P. Beard.

### [48 South. 405.]

Water and Water Courses. *Railroads. Embankments. Obstructing water. Surface drainage. Pleadings. Instructions. Variance.*

In a suit against a railroad company for obstructing water by the construction and maintenance of a track embankment, the issue made by the pleadings and the evidence being whether the damages claimed resulted from the obstruction of a water course or from interference with ordinary surface water:—

(a) Instructions are erroneous which authorize a verdict for the plaintiff on a finding that the construction of the embankment caused the injury, ignoring the contention that it only interfered with surface drainage; since

(b) A railroad company is not liable in every case where a necessary track embankment results in injury to natural drainage, but is liable only where it can prevent the injury without substantial additional inconvenience, expense and danger; therefore

(c) The plaintiff cannot recover because the embankment obstruced surface water, his pleadings and his evidence being insufficient to support a recovery on that theory.

From the circuit court of Greene county.

Hon. William H. Hardy, Judge.

Beard, appellee, was plaintiff in the court below; the railroad company, appellant, was defendant there. From a judgment in plaintiff's favor the defendant appealed to the supreme court. The facts are fully stated in the opinion of the court.

*McWillie & Thompson,* for appellant.

The issue presented to the jury for its determination was whether or not the embankment obstructed a natural stream of water.

There were no allegations in the declaration warranting a recovery of damages caused by the obstruction of mere surface water, for the plaintiff did not aver that the defendant, instead

of putting up an embankment, could have employed another method of constructing its line equally safe, convenient and inexpensive, by which the damage could have been avoided, nor did he on the trial offer any evidence to that effect.

The rule of the common law that surface water is a common enemy which each land owner may fight according to his own necessities without regard to his neighbors, has only been modified to the extent that he shall do no unnecessary injury to others, as it is incumbent upon one claiming damage from surface water obstructed by an adjoining proprietor to aver and prove such absence of necessity as exempts the case from the common law rule, or to put it in judicial phrase, that another method of accomplishing the same result without such damage equally safe, convenient and inexpensive, was open to the adjoining proprietor. *Sinai v. Railroad Co.*, 71 Miss. 547, 14 South. 87; *Yazoo, etc., R. Co. v. Davis,* 73 Miss. 678, 19 South. 487.

In the *Sinai case,* which was decided on the pleadings the demurrer of the defendant railroad company to the plaintiff's declaration was overruled on the express ground that the declaration alleged that another method as cheap, safe and convenient, could have been employed in the construction of the line. *Sinai v. Railroad Co.,* 71 Miss. 554, 14 South. 87.

The *Davis case* went to trial on the merits, and a judgment in favor of the plaintiff was reversed, the court holding that it was essential to prove among other things that a trestle would be as safe and economical as an embankment, in order to fix liability for obstruction of water caused by the latter.

In both of these cases there was no obstruction of natural stream, the damage arising entirely from overflow and surface waters on low lands.

It is too obvious for argument that no natural stream was obstructed in the present case. The testimony on both sides makes this perfectly apparent. The whole country at the point in question was very low and like that involved in the *Sinai* and *Davis*

*cases* had always been subject to inundation after heavy rains from overflow and surface water except at a few places somewhat elevated above the general level. What the plaintiff's witnesses refer to as "bays" are simply slight depressions in the land and not natural streams of water. The testimony in its entirety, indeed the testimony of each witness on the subject, in its entirety, makes this absolutely clear. In wet weather these depressions are to some extent under water, but they are not natural streams. In Webster's International Dictionary, among the several definitions of the word "bay" we find the following: "A tract covered with trees (local U. S.)," and this is the only definition having any possible relation to the sense in which the term was employed on the trial of this case. As is well known the bay tree flourishes in such depressions of low lying lands as mentioned by the witness for the plaintiff as bays. The word as used by the witnesses has much the same meaning as the word "slash" which is defined as follows in the same work: "swampy or wet lands overgrown with brushes. (Local U. S.)" What was meant was the slight depression denominated as a "swale," defined in the work mentioned as "A valley or low place; a tract low and usually wet land; a moor, a fen."

The witnesses for plaintiff speak of these depressions as "bays," "open bays," "branches," and "open bay branches," but all the terms mean the same thing. The plaintiff's son, a young man twenty-one years of age, explains what is meant by "open bay branches," the term used in the declaration. He says the term means a large, low, flat body of land about half a mile wide between his father's place and a certain ridge which become inundated as it in fact did before the railroad was built. The plaintiff's father speaks of the land lying towards the railroad as "bay flat country." The plaintiff, when asked what he meant by a bay answered simply that it is a bay, but distinguished it from a creek. The plaintiff's son, an adult, admitted on cross-examination that the "open bay branches" were mere depressions in a low, flat tract, and that his father's land did not

drain towards the place where they crossed the line of the railroad. It was shown fully for the defendant that there are no natural streams at the location in question.

It seems idle to cite authority on a mere common sense proposition, but that these depressions are water courses in the sense contended for by plaintiff in the court below, has been negatived by the courts.

When on the supreme bench of Kansas, Judge Brewer delivered an opinion that leaves nothing to be said on the subject. He said: "For a water course there must be a channel, a bed to the stream, and not merely low land or a depression in the prairie over which water flows. It matters not what the width or depth may be, a water course implies a distinct channel, or way out and kept open by running water, a passage whose appearance, different from that of the adjacent lands, discloses to every eye, on a mere casual glance, the bed of a constant or frequent streams." *Gibbs v. Williams,* 25 Kan. 220, 37 Am. Rep. 241.

That a definite channel, having a bed and sides or banks is an essential of a water-course, is well settled, as shown by the numerous authorities cited by Judge Brewer.

The whole country in the locality was subject to inundation and these depressions were doubtless the last to become free of water and may have served, in some measure, at certain points, to carry off the overflow and surface water, but that did not make them natural streams. The witnesses for plaintiff seemed to labor under the erroneous idea that because they were natural depressions in the land below the ground level they were natural streams. If their idea were correct, what an immense part of the Yazoo and Mississippi delta would be natural streams, and yet in the *Sinai* and *Davis cases* the court was considering controversies from the delta and the words "natural streams" had there a meaning as well defined as they could have had in cases relating to areas having any kind of topography.

The plaintiff having proved no obstruction of a natural

stream of water and wholly failed to prove that the damage from surface water could have been avoided by another method of construction than the embankment equally safe, convenient and inexpensive the defendant could have remained passive in confident assurance of a favorable verdict but, although it was not necessary for it to do so, it took the affirmative and showed that as between the embankment and a trestle, the former was the safer, more convenient and less expensive method of constructing its line.

The appellee says that the court cannot reverse the judgment herein without overruling the case of *Railroad Co. v. Miller,* 68 Miss. 760, 10 South. 61. We can not assent to this proposition for the reason that in the *Miller case* the railroad company did not merely construct its road across the line of flowage of the water but cut a ditch that extended a half mile along the line of the road into which all the water was gathered and from which it was discharged at the end of the ditch on the plaintiff's land. *Ib.* p. 763. We have never doubted for a moment that one who, by an artificial arrangement gathers surface water into a narrow compass and discharges it with the increased force attending such treatment upon the land of another is liable in damages, and this is all that the *Miller case* decides. If that case held what the appellee seems to think it held, it has already been overruled by the *Sinai case* and the *Davis case, supra.*

The cases of *Railroad Company v. Mason,* 51 Miss. 245, and *Railroad Co. v. Archibald,* 67 Miss. 28, 7 South. 212, involved streams or natural water-courses and are in perfect harmony with our contention, and the case of *Railroad Co. v. Smith,* 72 Miss. 677, 17 South. 78, also cited by appellee, strongly supports the very doctrine upon which we rely.  . . . . . . .

The error of the court below in refusing the instruction asked by defendant predicated of exemption from liability if the openings were sufficient to carry off the water of all ordinary overflows, cannot be excused by the fact that it repeated the error condemned in the *Davis case* by forcing upon defendant an in-

struction charging that only the capacity to carry off unprece-
dented overflows could give such exemption from liability.
The modified instruction condemned in the *Davis case* as insuf-
ficiently guarding the rights of the defendant in that case was
not asked in this case until the defendant found that it could
not get the instruction to which it was entitled.

*Harrison & Gex* and *H. P. Heidelberg,* for appellee.

The appellant railroad company recognized the places in
question on their railroad, where culverts were originally con-
structed and through which open bay branches flowed, as nat-
ural streams, water-courses.

This conclusion is based on the facts, as shown by the record,
that before the railroad company constructed its railroad
through the lands in question and over these branches, they left
an opening for the free passage of water through their road-bed
by the construction of culverts at the two places along their road-
bed where the open bay branches were crossed. These culverts,
as shown by the record, were made by "two pieces of timber
about twelve inches square, laid one on another, and then an-
other piece laid on top of these two pieces, leaving an opening
of about two feet by eight feet for the passage of water." If
there were no well-defined channels or natural streams of water
at these two places, why did the appellant Railroad Company
construct these two large culverts with an opening two feet by
eight feet?

But the record further shows on this point that not only did
the appellant Railroad Company then realize that there was a
well-defined channel or branch that flowed its waters at the
places in question; but within a year, or about such time after
the culverts were constructed with an opening eight feet by two
feet for the free passage of water through its railroad bed,
when the usual freshets came, the velocity of water that ran in
its usual course through these openings in question was of such
force and volume that the culverts were washed out of the bed

of the railroad. Surely appellant then recognized that there was a flow of waters at these points in question where the culverts were constructed, and that they were of great force and volume and that they flowed naturally in these well-defined channels.

But on this point the record further shows that the appellant, before the railroad was constructed through these lands, was appealed to by the appellee to construct at the points in question a trestle, and that appellant was then advised of the condition of these branches at these places. There can be, then, no doubt but that the preponderance of evidence and the acts of the appellant in constructing said culverts and trestles at said places in question show that the open bay branches were natural streams of water with defined channels; and in wet seasons of the year and in times of freshets conveyed from the higher lands on the south side of the railroad to the low lands on the north side of the railroad great volumes and areas of water.

But whether the proof showed that the open bay branches were or were not natural streams of water, and that appellee's land and crops were damaged merely by surface and overflowed water backed up by appellant's railroad embankment, we respectfully submit could not prejudice the judgment of the lower court. The only point the appellant could have made on the question is that there was a want of proof as to whether or not the open bay branches were natural streams of water, and that there was a variance between the allegations of the declaration and the proof; and the only way of asserting a variance, is by an objection specifically made during the trial of the case in the court below and on motion to exclude the testimony and for a peremptory instruction on that specific ground; but no such objection was made. The reason for this is that the plaintiff in the trial court, in the event there is a variance between the proof and the allegations in the declaration, may be allowed to amend the declaration to conform to the proof.

On this point we cite the following authorities:

In the case of *Greer v. Bush,* 57 Miss. 588, our court, speaking through CHALMERS, J., held: "The question of variance discussed by counsel cannot be noticed, because no objection was made before verdict. We do not consider the instruction asked by the defendant and refused, as sufficiently admonishing the court or the plaintiffs that the question of variance between the declaration and proof was intended to be raised. Such objections should be explicitly and distinctly made, in order that the court may determine whether it is a proper case for amendment."

Our court again in the case of the *Illinois, etc., R. Co. v. Cathey,* 70 Miss. 332, 12 South. 253, held: "There was a fatal variance between the declaration and the evidence in this case, but no objection was made on that ground, and, as an amendment would have been allowable so as to conform the pleading to the evidence, if this objection had been made, it must be held to have been waived, and cannot be made available here now."

Our court again in speaking on this question in *Kimbrough v. Ragsdale,* 69 Miss. 674, 13 South. 830, said that "A variance between the cause of action as stated in the pleading, and that sought to be proved, can only be taken advantage of by objection to the testimony. Without such objection, the variance will not be considered on appeal."

This question is, therefore, well settled in this court, and it is useless for us to cite further authorities on this question, and we submit that the question could not now be raised in this court for the first time. And as the appellant failed to make specific objection to any variance on the trial of the cause in the lower court, many of the instructions that were refused were properly refused for the above reasons.

The law favorable to the appellant, was fully and most favorably given in the court below, and every point favorable to the appellant was fully and elaborately granted in a number of in-

structions. And while the learned trial judge might have granted some of the refused instructions asked by the appellant, we submit that the appellant was not prejudiced in any way by the refusal or modification of any of the instructions asked for by the appellant, as the law favorable to the appellant was elaborately given in a great number of instructions, and there is no cause for complaint in this court. There were sixty instructions asked for by the appellant. Many of them covered the same points, and many of them were refused because similar instructions were given.

The instructions granted to appellee embodied the law correctly, and in no way could prejudice the rights of the appellant. In support of the instructions given for the appellee we cite the following authorities. *Illinois, etc., R. Co. v. Miller,* 68 Miss. 760, 10 South. 61; *Mississippi, etc., R. Co. v. Archibald,* 67 Miss. 39, 7 South. 212; *Mississippi, etc., R. Co. v. Caruth,* 51 Miss. 77; *Mississippi, etc., R. Co. v. Mason,* 51 Miss. 235; *Kansas City, etc., R. Co. v. Smith,* 72 Miss. 677, 17 South. 78.

Counsel for the appellant in their brief only cite two cases in support of their contention for a reversal of this case; both of these cases, to-wit: the *Davis case,* 73 Miss. 678, and the *Sinai case,* 71 Miss. 547, were from the Delta. They were based on peculiar facts, peculiar in that the topography of the lands of the Mississippi Delta is different from the lands in any other part of the state. The whole country in the Delta lies low and flat, with little or no elevations, and only now and then does some slow and creeping creek or river flow. There is almost a universal sameness throughout the Delta; and the laws applicable to the construction of railroad embankments or trestles throughout the Delta regions of the state could not apply to the piny woods section of the state, where the elevations are frequent and a score of acres might embody some bays and some hills and some shallow branches and creeks; and where the facts would demand that a railroad should construct a small trestle or give to the people living in

adjacent territory an opening for the free, natural egress and transmission of waters and streams, because in that part of the state miles of trestle is not necessary as it is in the Delta. As stated in the *Davis case, id.* "The alluvial lands of the Yazoo and Mississippi Delta were all built up by the deposits from the rivers. In a state of nature it is all subject to overflow, and if the roads in that country are to be so constructed as to preserve the nearest possible approach to a natural condition of the waters, they must be placed upon trestles from one end of the valley to the other."

In the case of the *Illinois, etc., R. Co. v. Miller,* 68 Miss. 760, 10 South. 61, is a case almost identical with the present one, this court held that the railroad company was liable "whether the flow of water, intersected and diverted by the road bed, was that of streams running in well-defined channels and having banks, or was merely surface water, coming from the adjacent hills and flowing in sheets across the swales between the hills and the adjacent creek." "That in either event the railroad company was responsible for the injury inflicted upon the plaintiff by the turning of the water upon his lands;" and the court further said: "If it be conceded that this was surface water, it has been so collected and discharged in injurious volumes upon the lands of the plaintiff as to entitle him to compensation for the injury resulting to his property therefrom." We respectfully submit that in order to reverse the present case, the *Miller case* above cited would necessarily have to be overruled.

FLETCHER, J., delivered the opinion of the court.

Appellee is the owner of a certain tract of land situated a short distance south of the line of appellant's railroad in Greene county. He filed his declaration, alleging that the railroad was so constructed as that its embankment interfered with the natural course of a stream or streams known as "open bay branches," whereby the water was caused in times of freshets to back up and overflow plaintiff's land. The first count of the

declaration sought recovery of actual damages, and the second count by proper averments made a case for punitive damages. The railroad company filed a special plea, averring that the embankment did not obstruct the course of any natural stream or water course, but served only to interfere with the drainage of rain water across plaintiff's land. Plaintiff did not demur to this plea, or in any way question its sufficiency in law, but filed a replication, denying the truth of the plea, and reasserting that the embankment did "stop up a natural stream of water." It will thus be seen that the issue before the jury, so far as the pleadings can determine the issue, was whether the damage resulted from the obstruction of a water course or from an interference with ordinary surface drainage. Much testimony was heard; the plaintiff's evidence going to show that the "open bay branches" were natural water courses flowing in channels fairly well defined, and the evidence for the defendant tending in some degree to show the contrary. The instructions asked and given for the plaintiff, except perhaps the seventh, recognized that the plaintiff's recovery depended upon his showing that a natural water course had been obstructed, as these instructions clearly, and as we think correctly, predicted the right to recovery upon this theory. Upon defendant's theory of the case, in support of which there was some testimony, the defendant asked a number of instructions, all of which were refused, and the jury was in effect charged that the only escape for the railroad company was to show that the construction of the embankment did not cause the injury, entirely ignoring the point as to surface drainage. The twenty-seventh charge, to illustrate, was refused; that charge reading: "The court instructs the jury that if the roadbed of the defendant railroad company, upon which it constructed the fill which the plaintiff claims obstructed the water, was upon the lands of the defendant company, and the obstruction of water was merely the surface drainage of rain water, and not a regular stream or drain, then the jury must find a verdict for the defendant."

Upon the issue made by the pleadings, this error is apparent.

It is said, however, that, independent of the pleadings, it is the law that, if a railroad company by the construction of an embankment collects surface water so as to cause overflow and damage, the liability is the same as if a natural stream is obstructed, and that a recovery was proper upon either theory; that if the declaration was for the obstruction of a water course, while the proof showed an interference with ordinary surface drainage, at the most there was but a variance, which was waived by the failure of the defendant to object to the testimony or to ask for a peremptory instruction on this ground. There might be some force in this argument if the testimony was in harmony as to the character of the water; but a variance could not have been suggested in the court below in the light of plaintiff's testimony that the "open bay branches" in fact constituted one or more water courses flowing in well-defined, or at least regular, channels. There was manifestly no variance if plaintiff's testimony was to be credited. There is no escape from the conclusion that the pleadings, the proof, and the charges for the plaintiff made one case, and the court, by refusing defendant's charges, made another. Nor is it true that the railroad company must respond in damages in every case where a necessary railroad embankment results in injury to land by interfering with natural drainage. The true rule on the subject is stated with precise accuracy in *Sinai v. Louisville, New Orleans & Texas R. Co.,* 71 Miss. 547, 14 South. 87. That case modifies the doctrine of the common law as to surface water only to this extent: That if the railroad company can prevent the injury without substantial additional inconvenience, expense, and danger, then it should do so. If this plaintiff expects to concede that the embankment does not obstruct any natural water course, he must bear this principle in mind, and be prepared to meet the issue as to whether the road could have been constructed otherwise with equal economy and safety. On the trial of this case, it may be remarked, the testimony was all the other way.

It is insisted that this view as to surface water cannot be

reconciled with the case of *Railroad Company v. Miller,* 68 Miss. 760, 10 South. 61. But that was a case in which the railroad company had constructed a ditch half a mile long, in which surface water was collected and afterwards discharged upon plaintiff's land, and is therefore akin to the case of *Railroad Co. v. Lackey,* 72 Miss. 881, 16 South. 909. Of course, the company cannot collect waters, and by an artificial channel pour them upon adjacent lands. This is altogether different from the incidental damage which will in many cases follow the construction of a railroad embankment over a swampy piece of land. The principles applicable in the case of obstructed surface drainage, and that alone, are set out in the *Sinai case, supra,* and the cases of *Railroad Co. v. Davis,* 73 Miss. 678, 19 South. 487, and *Railroad Co. v. Wilbourn,* 74 Miss. 284, 21 South. 1. Of course, these authorities have no reference to interference with natural water courses, and, had the instructions been in accordance with the declaration and pleas, we would doubtless have reached a different conclusion.

*Reversed and remanded.*