## Mobile & O. R. Co. *v.* Tays.[*]

(Division A. March 29, 1926.)

[107 So. 871. No. 25419.]

WATERS AND WATERCOURSES. *Railroad may construct embankment under trestle with culvert to divert overflow of vagrant waters, thereby increasing volume and velocity.*

Railroad company has right to construct embankment under trestle and erect culvert to drain overflow vagrant waters, even though volume and velocity may be increased thereby, where complainant has not shown that such embankment could be constructed in any other convenient way, safely and at reasonable expense, and any damages accruing because of increased volume and velocity are *damnum absque injuria.*

---

[*]Corpus Juris-Cyc. References: Waters, 40 Cyc, p. 645, n. 29.

APPEAL from chancery court of Prentiss county.

HON. ALLEN COX, Chancellor.

Bill by A. A. Tays against the Mobile & Ohio Railroad Company. Decree granting a permanent injunction, and defendant appeals. Reversed and decree rendered.

*Carl Fox, R. C. Beckett* and *Ely B. Mitchell,* for appellant.

I. In discussing this case we must bear in mind that the complainant is not asking for damages but is asking for an injunction. He admits in the petition that the trestle has already been partially filled. The evidence shows that the trestle has been about half filled and the concrete culvert has been installed. Yet no damage was alleged or proved.

II. The proof as to irreparable damage is vague, indefinite, uncertain and disputed. In a suit for damages which have been caused by flood waters, any farmer can testify as to the damage done; but in a suit for an injunction because of irreparable damage which would be caused by a change it seems to us that the testimony of unexperienced witnesses, without any statements of facts on which they base their opinions, should be of little value.

III. In order to recover damages from a railroad company, having the right of eminent domain, for interfering with drainage of overflow or surface water, a plaintiff must prove that the construction of the railroad is improper in some respect, or that the damage to complainant could have been avoided by some method as good, safe and cheap as the construction actually used. There was no such proof in this case. *Sinai* v. *Ry. Co.,* 71 Miss. 547, 14 So. 887; *R. R. Co.* v. *Smith,* 72 Miss. 677, 17 So. 78; *R. R. Co.* v. *Davis,* 73 Miss. 678, 19 So. 487; *R.*

*R. Co.* v. *Welbourn,* 74 Miss. 284; *A & V. R. R. Co.* v. *Beard,* 93 Miss. 294, 48 So. 405.

Plaintiff here introduced no proof as to the proper construction of the railroad, nor even as to the capacity or proper construction of the concrete culvert, as compared with the old trestle. The testimony introduced by plaintiff with reference to probable damage to his land was all based on the closing of the trestle. None of the testimony with reference to probable damage to the land appeared to take into consideration the concrete culvert. Plaintiff did testify at one place that ''the culvert would not carry the water, as it is not large enough and is not set right,'' but he did not state anything as to its size or capacity as compared with the trestle, nor as to why he considered it was not set right.

IV. An injunction should not be granted interfering with the construction of a railroad roadbed, at least without a very clear and certain showing of violation of right and of irreparable damage. We have found no cases in Mississippi where a railroad has ever been enjoined from interfering with the flow of water. In one case a drainage district was enjoined which, of course, meant that the drainage district would have to abandon the proposed levee. *Leflore County* v. *Cannon,* 81 Miss. 334, 33 So. 81. But this case was subsequently partially overruled. *Jones* v. *George,* 126 Miss. 576, 89 So. 231. In one or two cases private individuals or corporations have been enjoined, such as *Quitman* v. *Lumber Co.,* 103 Miss. 324, 60 So. 326, and *Ferris* v. *Wellborn,* 64 Miss. 29. In these cases the proposed levee or dam could well be abandoned. But the Mobile & Ohio Railroad cannot be abandoned and there is absolutely no proof in the record that the proposed concrete culvert was not entirely proper and necessary to the safe and economical operation of the railroad.

V. There was no proof that the proposed culvert would not be amply sufficient to carry the usual and

normal water flowing westward through the trestle, but the complainant only attempted to show that the culvert would not accommodate the overflow water flowing back eastward from Osborne creek under the trestle and spreading out over the lands east of the railroad. The interference with such water is not interference with a natural stream and gives plaintiff no right of recovery. Such waters are "vagrant flood waters" which may be interferred with without liability for damage. See *Indian Creek Drainage Dist.* v. *Garrott,* 123 Miss. 319, 85 So. 312; *Jones* v. *George,* 126 Miss. 576, 89 So. 231; *Herring* v. *Lee County* (Miss.), 93 So. 436; *Drainage Dist. No.* 10 *of Bolivar County* v. *Drainage Commissioners of Washington County,* 130 Miss. 764, 95 So. 75.

*E. C. Sharp,* for appellee.

Great stress is placed on the use of the words "overflow waters" by many of the witnesses, and it is argued by appellant that because of the use of these words by the witnesses the waters flowing under the trestle in question were not following the natural watercourse and that the flow thereunder could be obstructed or diverted with impunity.

Our contention is that the proof conclusively shows that these waters were not overflow waters, and even if that were the case, the decree of the lower court was proper as it is shown by the testimony that every time sufficient rain fell to fill the creek one-third or one-fourth full, and this happened frequently and had for many years, the waters left the original channel and flowed under this trestle through and along the old watercourse which had existed from time immemorial and was in existence at the time the railroad was originally constructed, and that because of this natural watercourse it was necessary for the railroad company to construct a trestle five hundred and fifty feet in length to provide an opening for these waters. Many definitions are given by law-writers as to what constitutes a watercourse. See 27 R.

C. L. 1062; *Chicago, R. I. & P. R. R. Co.* v. *Groves,* 20 Okla. 101, 93 Pac. 755, 22 L. R. A. (N. S.) 802; 27 R. C. L. 1064.

In the case of *R. R. Co.* v. *Smith,* 72 Miss. 677, cited by appellant, the court held that "while the duty imposed by law upon these corporations to provide suitable and sufficient roadways over which ponderous engines and trains are to be driven, carries with it, from necessity, the right to erect embankments, etc., still such companies may not, under a claim of being absolute owners of their roadways, so construct them as to impair unnecessarily the value of adjacent property." And in *Chapman* v. *Copeland,* 55 Miss. 476, the court held that the diversion of a watercourse gave to the plaintiff a right of action for the recovery of nominal damages whether any real injury had or had not resulted. See, also, *Am. Locomotive Co.* v. *Hoffman,* 8 Am. & Eng. Ann. Cas. 733; 27 R. C. L. 1115; *Whitfield* v. *Rogers,* 26 Miss. 84; 27 R. C. L. 1135; *Miss. Cent. R. R. Co.* v. *Carruth,* 51 Miss. 77; *I. C. R. R. Co.* v. *Miller,* 68 Miss. 760; *Ferris* v. *Wellborn,* 64 Miss. 29.

It is contended by appellant that there is no proof in the record to show that the concrete culvert constructed in the present case was not entirely proper and necessary to the safe and economical operation of the railroad. Certainly there was not, but we cannot and do not concede that the railroad company can consider the interest of the railroad company to the exclusion of the rights of adjoining property holders. And it is preposterous and absurd to argue to this court that a concrete culvert eight by ten feet in size is sufficient to replace a trestle or opening five hundred and fifty feet in length.

The finding of fact by the chancellor is supported by all of the testimony in the case, the injunction was properly granted and the decree should be affirmed.

Argued orally by *R. C. Beckett,* for appellant, and *E. C. Sharp,* for appellee.

McGowen, J., delivered the opinion of the court.

The Mobile & Ohio Railroad Company prosecutes an appeal from a final decree of the chancery court of Prentiss county granting complainant, A. A. Tays, a permanent injunction restraining the defendant, Mobile & Ohio Railroad Company, "from further filling up trestle No. 303-68, or any part thereof."

Tays exhibited his bill, alleging that he was owner of one hundred twenty-eight acres of land lying west of the Mobile & Ohio Railroad, that there was a natural watercourse running through said land, and that near the northeast corner of his land there was a long railroad trestle under the track of the railroad, providing an outlet for the waters in that region. It alleged further that during the rainy seasons a great quantity of water accumulated on the lands adjoining his lands and passed under this trestle, spreading out over the lands of petitioner and other landowners, spreading out and flowing slowly over a wide area of low lands without damage to petitioner and adjoining landowners; that the defendant railroad company had begun to fill up said trestle and thereby divert the water so as to greatly increase both the volume and the rapidity of the water flowing upon the land of complainant; alleged that petitioner's lands were rich, alluvial, and of great value—bottom lands—and that they would be washed to an extent that would render them practically valueless if the railroad company were permitted to fill in with earth this trestle; that he had no adequate remedy at law; and that the injury to his lands would be irreparable.

A temporary injunction was granted enjoining the defendant from further filling up the said trestle, or from altering, changing, obstructing or diverting said watercourse at this point under the trestle above described.

To this bill the defendant answered admitting the location of the railroad running down through this valley and the general geographical situation; denied that there was any natural watercourse, and denied that the filling

of this trestle would stop the natural flow of water in watercourse, but asserted that the waters allowed to flow over this open space were the overflow vagrant waters of Osborne creek; admitted that it had begun to fill up with earth between its track and the ground, had constructed a concrete culvert, but denied that the filling up of the trestle or the construction of the culvert would divert the watercourse or injure the plaintiff's lands.

The answer specifically stated that the natural flow of water would not be diverted, but that the only water that would be affected by the construction of its embankment and the placing of its tracks upon said embankment, filling in the unfilled space in said trestle, would be the overflow vagrant waters, such waters as came from Osborne creek flowing promiscuously over the surface of the botton lands in that vicinity.

The proof developed that Osborne creek is on the west side of the railroad, and that at the lower end of this trestle there leads out a ditch, runway or watercourse at a point about one hundred sixty-five feet from the railroad trestle, which flows almost east beneath the trestle, and on in an easterly direction, then turning south east; and at the lower end of Tay's tract of land there is another trestle. All the proof tends to show that the water runs from the east to the west when the water is at normal stage. There is also a ditch from the northeast running down and connecting with this ditch, or watercourse, which runs under and through from the east to the west, according to the witnesses, when the water is flowing normally and within its banks. The proof further shows that when Osborne creek begins to rise that, instead of the water flowing from the east to the west, it backs out through this ditch and runs from west to east and flows out all along under this trestle its entire length, the trestle here being about five hundred fifty feet. The height from the ground is not clearly shown; but before this injunction was served the railroad had filled in about two hundred fifty feet, leaving, at the time this injunction was served, a concrete culvert eight

by twelve feet where the ditch is located, and about three hundred feet open space.

The witnesses are unanimous in their testimony that the water which has been flowing through this open space beneath the railroad track, called trestle 308-68, was surface, vagrant or overflow water. The witnesses on the east side of the railroad contend that the filling in of this three hundred feet, except for the concrete culvert above described, would not injure the complainant, Tays, while the witnesses on the west side of the railroad including complainant Tays, are practically agreed that there would be injury by the increased volume and velocity of the water upon his land.

There was no effort on the part of the plaintiff to show that the railroad embankment could be constructed in any other convenient way so as to be safe and at reasonable expense; neither did the plaintiff undertake to show that the 8 x 12 concrete culvert was insufficient to permit the free and uninterrupted flow of the water from the culvert to the west into Osborne creek; but there was the testimony of Tays tending to show that it was improperly constructed for the carrying of the overflow or vagrant water, in flood times, from the west to the east.

The record shows, we think, that the chancellor viewed the premises of Tays and the railroad, and held that Tays would be damaged, that the damage would be a continuous one, and that the ditch flowing into Osborne creek was a natural watercourse, and that he found well-defined banks on the east side leading in a southerly direction and passing back to the west side of the trestle below the trestle in controversy. He further found that the damages accruing to plaintiff if this three hundred feet of trestle were closed as proposed would be continuous and by decree perpetually enjoined the railroad company from filling this trestle or any part thereof.

Taking it for granted that the chancellor correctly held that this depression is a watercourse, and treating it as such, the decree cannot be upheld in the light of the decisions of this court, beginning with the case of

*Sinai* v. *Railroad Co.,* 14 So. 87, 71 Miss. 547. · In the Sinai case, the questions there presented were resolved upon common-law principles adapted to new and changed conditions, adhering to the principle that surface overflow and vagrant waters are a common enemy which every landowner has the right to fight and fend as suits his necessities. In that case the demurrer of the defendant railroad company to the plaintiff's declaration was overruled on the ground that the declaration alleged that another method as cheap, safe, and convenient could have been employed in the construction of the line.

In the case of *Railroad Co.* v. *Davis,* 19 So. 487, 73 Miss. 678, this court reversed a judgment in favor of the plaintiff, holding that it was essential to prove that a trestle would be as safe and economical as an embankment in order to fix liability for the obstruction of the overflow and surface waters on lowlands caused by an embankment.

It will be recalled that in the instant case the natural flow of the water in the watercourse is from the east to the west, and there is no complaint in the pleadings or in the proof in this case that damage will accrue or that the embankment will obstruct the natural flow of the water toward and into Osborne creek; but the complaint is because the embankment will stop the flow of surface water in flood time and the vagrant waters along the bank of Osborne creek above and north of this ditch, which could, when the embankment is completed, no longer flow under the railroad trestle and to the east. No effort was made by the complainant in this case to show that the construction of the embankment was not the safest, least expensive, and most convenient to the railroad company in the proper operation of its business.

The modification of the common law announced in the Sinai case, and followed since, seems to have been wholly ignored in the court below by the court and the complainant. The principle contended for by the appellee, the complainant in the court below, strictly adhered to, would mean that every railroad now being constructed

would be required to construct its railroad through the lowlands, such as are described in this case, upon trestles, because it is a well known fact that, in the hill section of this state, where these small streams abound, in times of rain it is a usual thing for these small streams to overflow and the vagrant waters flow over the entire valley from hill to hill.

Mr. Chief Justice Cooper, in the case of *Kansas City, Memphis & Birmingham Railroad Co.* v. *Joseph Smith,* 17 So. 78, 72 Miss. 677, 27 L. R. A. 762, 48 Am. St. Rep. 579, in a most interesting and learned manner, described this situation, and that case is in point here. The facts in the Smith case are so similar as to be almost identical. In that case the court said:

"The duty imposed by law upon those corporations to provide suitable and safe roadways, over which ponderous engines and trains are to be driven, carries with it, from necessity, the right to erect grade embankments, on which the rails are set, and when this is done with due regard to the rights of owner of adjacent and proximate lands, any necessary and consequent injury to such lands must be borne by the owner. But such companies may not, under a claim of being absolute owners of their roadways, so construct them as to unnecessarily impair the value of adjacent property. . . .

"It cannot be the law, however, in this state that the flood waters of the large streams which are within or along the borders of this state are to be dealt with as the waters of a stream, not to be obstructed, impeded or turned aside under any circumstances, except upon condition that the person so doing shall respond in damages for all injury sustained by another riparian owner and be liable for nominal damages as for the infringement of the legal right of adjacent proprietors who in truth suffer no real injury."

After discussing the right of owners of alluvial lands to protect their farms from flooding, the court said:

"But on the clearly shown facts of the case now before us, we think no right of recovery is disclosed   (1) be-

cause no failure of duty by the defendant in the construction of its roadway is established, and (2) because no casual connection is proved between the act of the defendant and the injury resulting from the flood. . . . It is not claimed by the plaintiff that his lands would not have been submerged by the flood of July (for injury by which he sues) if no railroad had been built in the valley. His contention is that the water was somewhat deeper on his land than it would have been; that it remained longer and flowed with a stronger current. . . . We think it may with safety be said that a valley of a mile, or a mile and a half, along streams of the class of Town creek goes far beyond any requirement of the law for the course of the stream. How much less than this would be sufficient, we need not attempt to declare. That the embankment of the railway has not obstructed the course of the stream is demonstrated by the fact that no injury has resulted to any one during the ordinary floods, which have passed harmlessly away. It is the extraordinary, the exceptional, the unexpected, which has caused the injury for which the plaintiff sues. . . .

"We dispose of the cause on the ground above indicated, i. e., that on the facts proved no liability rests upon the defendant as for the obstruction of a watercourse."

In the case of *Railroad Co. v. Davis,* 19 So. 487, 73 Miss. 678, the court said on this subject:

"It is not the law that the defendant was under the duty of so constructing its roadway as to preserve the land of the plaintiffs from all injury by reason of water to which it would not have been subject in its natural state."

The same reasoning is found in the case of *A. & B. R. R. Co. v. Beard,* 48 So. 405, 93 Miss. 294. None of these cases are in conflict with the announcement of this court in the case of *Illinois Central Railroad Co. v. Miller,* 10 So. 61, 68 Miss. 760, because in that case the railroad company had constructed a ditch which assembled and discharged the waters upon the plaintiff, and did

142 Miss.—48.

not deal with the case of a watercourse which carried its normal flow of water in one direction, and when floods came the waters backed up and flowed in the opposite direction, which is the case we have before us.

The only distinction that can be made between the instant case and *Indian Creek Drainage District* v. *Garrott,* 85 So. 312, 123 Miss. 319, is that this defendant is a railroad company and the defendant in the Garrott case was and is a levee district. The Garrott case, in our opinion, is controlling here. Judge HOLDEN, as the organ of the court, said:

"The gist of the complaint of the landowners between the levee and the river and west of the river is: First, that the commissioners of the levee district have no right to levee against vagrant flood waters which have left the channel of Coldwater river and spread over the adjacent lands of the valley, thereby causing irreparable injury by diverting the water upon their lands; second, that if the levee commissioners have such right, then in exercising it they have no authority to obstruct the outlets or natural watercourses connecting with the river through which its flood waters pass and spread generally over the lands of the valley, and eventually return to the channel many miles below. . . .

"On the first proposition we think that when the flood waters left the channel of Coldwater river and spread for miles upon the lands of the basin or adjacent valley, they are to be characterized as vagrant flood waters as distinguished from ordinary surface or rain waters, or regular running stream waters. . . .

"Such diversion of vagrant flood waters, when incident to and reasonably necessary to the effective protection of the lands in the levee district, is within the phrase '*damnum absque injuria.*' . . .

"There is no complaint in this case about obstructing the watercourses, and thereby diverting the natural and regular flow of the waters of these channels. But the evil complained of is the obstruction against the vagrant flood waters which would partly pass out upon

the valley through these outlets. These watercourses or outlets were inactive bayous, sloughs, and depressions which amounted to mere conduits or passageways for foreign flood waters. They were not natural running streams nor regular flowing watercourses. It is true some of them contained waters of their own, but it ordinarily flowed in no direction. There was no regular and continuous current in these natural watercourses. The levee did not interfere with the flow of their own waters, because they had no flow except that produced by the flood waters from the river. . . .

"We think the levee commissioners had a right to build the levee across these outlets in order to protect against flood waters. . . .

"We do not intend to hold, nor to leave the impression, that there can be no recovery for obstructing and diverting the regular flow of natural running streams, or for collecting and diverting surface or rainwater to the injury of another. We say that, assuming the watercourses in this case are natural watercourses from a legal standpoint, still there is no complaint of obstruction of their own flowing waters, and no complaint of obstruction to any other waters of their own, but the case here is against obstructing and diverting vagrant flood waters; and we hold that the law authorized the obstruction of these waters. . . .

"The maxim. '*Aqua currit et debet currere ut currere solebat*,' as applied in the *Cannon case, supra,* has no application to vagrant flood waters; and we do not think the court had in mind flood waters when it decided the *Cannon case* [33 So. 81, 81 Miss. 334]."

The *Garrott case, supra,* was followed and adhered to in the case of *Jones* v. *George,* 89 So. 231, 126 Miss. 576, and the principle there announced has become the fixed law of the state, notwithstanding the writer of this opinion was the chancellor who tried the case of *Indian Creek Drainage District* v. *Garrott,* and entertained another opinion and was reversed.

The volume and velocity of the overflow waters may be increased by the erection of this embankment by the railroad company, but, unless Tays had assumed and met the burden imposed upon him under the rule announced in the Sinai case, the damages accruing to him, because of the increased volume and velocity of the waters would be *damnum absque injuria.*

Reversed, and judgment here for appellant dismissing the bill.

*Reversed.*