LOUISVILLE & N. R. Co. *v.* CAPDEPON.

(In Banc. Nov. 24, 1941.)

[4 So. (2d) 544. No. 34717.]

Smith, Hand & Arendall, of Mobile, Alabama, for appellant.

30

**Gex & Gex**, of Bay St. Louis, for appellee.

Argued orally by **C. B. Arendall**, for appellant.

**Roberds, J.**, delivered the opinion of the court.

In 1923 appellee purchased a house and lot in the municipality of Bay St. Louis, Mississippi, on which he and his family thereafter resided.

Many years prior thereto appellant acquired a right of way adjacent to that lot, on which right of way it constructed a railroad, and along the side thereof next to the property of appellee it dug a ditch, which ran parallel with its right of way and railroad tracks.

Appellee sued appellant for damages to his lot and improvements thereon, and also for inconvenience, danger to health of himself and family, etc., resulting, as appellee claimed, from the wrongful interference by appellant of the natural flow of surface waters from his lot by the construction of such railroad, aggravated by the negligence of appellant in permitting said ditch to become

clogged and stopped up by grass, tree tops, and other debris in the years 1937 to 1940, so that it would not carry the surface waters from appellant's lot as it had theretofore done, and for which the ditch was constructed, thereby casting such surface waters back onto the lot of appellee, causing the foregoing damage.

All elements of damage were eliminated by the lower court from consideration of the jury except that to the real property. There was a verdict and judgment for three hundred dollars for appellee, plaintiff below, from which this appeal is taken.

All questions presented on the appeal resolve themselves into the one question—whether the evidence was sufficient to support the finding of the jury that the railroad did, by the construction of its railroad, obstruct the natural flow of surface waters from the lot of appellee. If it did not, in fact, so interfere, then the railroad was under no duty to construct a ditch to carry off the surface waters from the property of appellee. If it did in fact so interfere, then all parties admit that the circumstances were such as to impose the duty on the railroad to construct the ditch and care for such surface waters, within the rules pertaining to surface water rights which this Court has laid down in Sinai v. Louisville, etc., R. Co., 71 Miss. 547, 14 So. 87; Illinois C. R. Co. v. Miller, 68 Miss. 760, 10 So. 61; Holman v. Richardson, 115 Miss. 169, 76 So. 136, L. R. A. 1917F. 942; Yazoo & M. V. R. Co. v. Davis, 73 Miss. 678, 19 So. 487, 32 L. R. A. 262, 55 Am. St. Rep. 562; Mobile & O. R. Co. v. Tays, 142 Miss. 743, 107 So. 871; Columbus & Greenville R. Co. v. Taylor, 149 Miss. 269, 115 So. 200.

See, also, the case of Yazoo & M. V. R. Co. v. Scott, 110 Miss. 443, 70 So. 459, in which the Court said that under circumstances which bring the case within the modified rule in Mississippi, it is not only the duty of the railroad company to properly construct, but also to properly maintain its roadbed, so as not to obstruct the natural flow of surface waters from property of others.

When plaintiff rested his case he had failed to introduce sufficient evidence to support the finding of the jury on that question, and the motion of defendant, then made, to exclude such evidence and for a directed verdict for the defendant, should have been, but was not, sustained. But we think that the evidence afterwards introduced by the defendant, taken with that which the plaintiff had offered, was sufficient to support such verdict.

Plaintiff and his witnesses had testified, in substance, that the natural slope of the land was from his lot toward the railroad and that the water naturally flowed in that direction—at least, a large part of it; that this was in the direction of the Gulf; that when this ditch was kept open it would drain the waters from his lot; as some expressed it, "it stayed dry;" that the railroad servants cleared underbrush and trimmed trees along the railroad property, and threw these into the ditch, and other debris accumulated therein, which the railroad did not remove; that after this took place "the water would not flow through it;" but would back up onto his lot to a considerable depth, and remain thereon for a week or more, which condition did not exist before such obstruction of the ditch occurred.

Defendant placed upon the stand Mr. E. S. Drake, a civil engineer, who had practised his profession in that vicinity some thirty to forty years, and whose qualifications were admitted by both sides. He had made a contour map of this lot and the surrounding lands, showing actual ground elevations. Appellant earnestly insists that this plat shows the lot of appellee to be in a natural depression, with a rim around it higher than the lot, which prevents the flow of water from the lot. The plat does not so impress us; on the other hand, the actual measurements of land elevations show that at least a part of the surface water therefrom would flow toward the railroad. But Mr. Drake also testified:

"Q. Taking this map that you were shown, these

markings, these levels you have taken, show that the natural topography of the land slopes across the Capdepon property to the east. A. Yes, sir; that is the lowest line 20.2, and comes in this direction, the 22.5 comes back through here, and back to 23, that part beneath the fill of the railroad.

"Q. Taking this map, as you have drawn it, and eliminate the right of way of the L. & N. Railroad Company that it has placed there, and before the right of way was placed there, which way does the natural topography of the land slope? A. Toward the Gulf.

"Q. Don't the measurement indicate if the L. & N. Railroad Company had never purchased this property and built up this right of way, that the water from the Capdepon land would turn to the east to where the right of way is now? A. Yes, sir.

"Q. The right of way has obstructed that natural flow to the east? A. No, sir; the west side of the right of way, these lines are in here, the right of way took in part of that drain, and the ditch comes in and takes the water that would be behind there.

"Q. You don't know what the conditions were before the L. & N. Railroad Company purchased this property? A. No, sir.

"Q. In your opinion, as an engineer, after observing all of the territory adjacent to Henry Capdepon's house, and noticing the contour of the land, would you, as an engineer, say that the Capdepon property did not, before the railroad was constructed drain into where the railroad is now? A. Probably part of that ravine did.

"Q. There was a ravine where the railroad is now? A. Probably so.

"Q. Where would the Capdepon property drain if the L. & N. Railroad Company's right of way was not there to obstruct it? A. Drain to the east.

"Q. Since the L. & N. Railroad has built up the right of way, it has become necessary to take the water off of Capdepon's land, or flood it?

''Defendant objects, because a legal matter. Sustained.

''Q. From your observation of the surrounding territory, immediately adjacent to the Capdepon house, and taking the contour of the land, and noticing the topography of the land where the Capdepon land is located, would you, in your opinion, say that the property would drain to the east, if the L. & N. Railroad right of way was not there? A. Yes, sir.''

As is usual in these cases, the damage resulting from water with which there was interference, as distinguished from damage by water from other sources, is not exact and certain, but, in the nature of the case, this could not be exact and must be approximated.

No question is raised as to the amount, elements or manner of proving the damage in this case.

Affirmed.