276 So.2d 574

James W. ROBERTS

v.

William D. BREWER et al.

SC 80.

Supreme Court of Alabama.

April 19, 1973.

Stova F. McFadden and Ray G. Riley, Jr., Mobile, for appellant.

Herndon Inge, Jr., Mobile, for appellees.

HARWOOD, Justice.

The complainants William D. Brewer, Viola C. Brewer, and Marguriette Davis, own land through which flows Baker Creek. The creek flows from their land onto and through land owned by A. L. Dees and M. Dees, and thence through land owned by the respondent James W. Roberts.

Beavers have built a dam across Baker Creek on respondent's land just over the

boundary line separating the respondent's land from the Dees' land. Dawes road and Ware road, two county roads, run through or along the borders of the Dees' land and that owned by the complainants and respondent. For a better understanding of the geographical situation, we here copy a diagram appearing in the brief of the appellant, who was the respondent below.

[764Z]

The complainants' bill contains, among others, the following pertinent paragraphs:

## "FOUR

"* * * That sometimes during the fall of 1969 a dam was constructed on the Respondent's land by beavers across the said watercourse or creek; that the water impounded by said dam was backed up on the land of the Complainants. That the Complainants at no time authorized the Respondent to back water onto their land.

## "FIVE

"Complainants aver that they have advised the Respondent that water was being backed up on their property by the said dam and requested the Respondent to remove the beaver dam so that the water would flow without obstruction in the said stream but that the Respondent has negligently continued to allow said dam to exist. The Respondent has negligently allowed said dam to exist on his property and to impound water to such an extent that it has backed onto Com-

plainants' premises; that although the Respondent has been requested on several occasions to remove the said dam and cease impounding water on Complainants' premises, Respondent has failed and refused to do so.

### "SIX

"That the said dam on the Respondent's property prevents the water in said stream from flowing from and through the Complainants' property and causes it to accumulate, overflow and stand on Complainants' said property and has caused the land to become damp and saturated with standing water for a depth of several feet over a large area and prevents Complainants from enjoying their land and that mosquitos are breeding and the water is stagnant and emits a noxious odor and that their property has been greatly damaged and a large area rendered unfit for use.

### "SEVEN

"That the Respondent is negligently maintaining or suffering a dam on his property across Baker Creek below the lands aforesaid belonging to Complainants which dam is obstructing, choking and hindering the flow of water in said stream and throwing the same back upon Complainants' said lands covering several acres with water and rendering it unfit for use.

### "EIGHT

"That the Respondent is negligently maintaining the said obstruction, has caused and is causing irreparable harm, inconveniences and damage to the Complainants and is diminishing the value of their property."

The bill prays that the court find that the acts of the respondent as set forth in the bill are a nuisance to the complainants, and that the respondent be ordered within a time set by the court to remove said dam, and if respondent fails to so do that the complainants be accorded the right to enter upon the land of the respondent and do all things necessary to remedy said condition and abate the nuisance, or to remove the dam. The prayer concludes with a prayer for general relief.

The respondent filed a demurrer to the bill as a whole, and separate demurrers to that aspect of the bill alleging that the respondent is negligently maintaining or suffering a dam to be located on his property causing water to back up on complainants' property, and to that aspect of the bill alleging a nuisance. Numerous grounds are set forth in support of each of these separate demurrers.

Upon submission for a decree on respondent's demurrer, the court decreed that:
"* * * the Respondent's demurrer as filed to the bill of complaint in the above styled cuase, be and the same hereby is overruled, and the Respondent be and hereby is allowed twenty (20) days from this date within which to file his answer."

Thereafter the respondent timely filed an answer.

At the hearing below Marguriette Davis, one of the complainants, testified that she has resided on her property for approximately nine years. The tract of land she originally purchased slopes from Dawes road down toward Baker Creek. Baker Creek runs entirely through her property, and at the time she purchased her property it was from 4 feet to 75 wide, and seldom overflowed its banks.

A pond had been dug by her grantor adjacent to Baker Creek which was filled by water from the creek. A peninsula about 100 feet long ran into the pond. The peninsula now covered with about a foot or a foot and a half of water. In addition, Baker Creek now is some 200 to 300 feet wide on her property.

Mrs. Davis testified that she had talked with the respondent about the beaver dam and he had told her he was "not worried

about it cutting my trees, that it was cutting his trees too and it was backing up on his land, and he was not going to do anything about it, that the dam was going to stay there."

The backing up of the water by the beaver dam had caused snakes to come into her yard, and a great infestation of mosquitoes. Two-thirds of the young hardwood trees standing in water have died, and pine trees on her property, some from 50 to 75 years old, have been girdled by the beavers.

On cross examination, Mrs. Davis testified that the beaver dam on respondent's land had been broken three times before by the county, and the "county" had promised her to break it again. However, after a county commission meeting attended by a large number of people, the record shows that when the county employees came to remove the dam, they were not allowed to do so. The matter was not pressed, and the result was that the county raised Ware road some two or three feet to prevent the water from the beaver dam from washing over it.

Mrs. Davis further testified that the beavers have now built another dam located on the Brewer land, and have started a third dam on her land. These are shown as dams Nos. 2 and 3 on the diagram ante.

Complainant William D. Brewer testified he had bought his property from Mrs. Davis in 1970. At that time some water was out of the original banks of Baker Creek, but he could walk within 25 or 30 feet of the creek. Now the water makes a big pond on his property, and comes on his land some 200 or 300 feet. Mr. Brewer estimates the height of dam No. 1 to be about five feet. The dam on his property (dam No. 2) is about 8 to 10 inches above the water.

He had completely removed the dam on his property several times but the beavers have rebuilt it. Water and beavers have killed some trees on his property.

Mr. Brewer testified he did not know too much about beavers, but he assumed the only way to keep them from rebuilding the dams would be to remove them to some other place. As to whether they would return is a problem for the future, and he was speaking of the problem now existing, and he was asking that dam No. 1 be removed.

Since the height of Ware road was increased, the water backs up in ditches along the road. The county agreed to destroy dam No. 2 which is on his property and partly on the county right-of-way.

Mrs. Viola Brewer testified that when she and her husband first bought their property a stick dropped in Baker Creek from the bridge (Ware road bridge) would move on out of sight. Today, the water is not moving at all.

Her husband has destroyed dam No. 2 several times, and she was present on two of these occasions. The last time removing dam No. 2 did no good, as the water level on both sides of the dam was about the same.

Roy Price, a district forester with the Alabama Forestry Commission, examined the area in question in February 1970. Part of Mr. Price's duties has been to advise with private land owners concerning timber problems, and he has considered many situations involving beavers. He has studied beavers and has written articles about them.

He observed the area in question from Dawes road, and walked Ware road along complainants' property.

He thought that the beaver colony in the area would number between ten and fifteen beavers. After his inspection, Mr. Price made a report to his superiors in which he stated there was a great deal of flood water on the property of the complainants, with damage to trees on their property. Further up Baker Creek there was fairly severe damage from beavers to timber on land owned by Mr. Marsh. The

Marsh land adjoins that of the complainants.

Mr. Price testified that the only natural enemies of beavers are alligators, and therefore beaver control is a very difficult problem. If a beaver dam is destroyed, the beavers normally rebuild it in a short time. If the beavers are destroyed but the dam is left intact, a new colony of beavers will move in.

Mr. Price recommended that the water level behind dam No. 1 be lowered sufficiently to drain the water from complainants' land. The best method of accomplishing this would be by placing perforated metal pipes in the dam. If an ordinary pipe be used, the beavers will promptly stop it up.

In addition, the beaver colony should be reduced by trapping, leaving two or three beavers. This, for the reason that the remaining beavers will prevent new beavers from moving in. The population growth of a beaver colony is controlled by the area of the water created by a beaver dam.

After building a primary dam, beavers then build secondary dams so that destruction of the primary dam will not result in total loss of backed up water. Mr. Price considered the dams above dam No. 1 to be secondary dams.

The respondent presented no evidence at the hearing below, but at the conclusion of complainants' case, respondent filed a plea in abatement. The basis of the plea was that if the relief prayed for be granted, A. L. Dees and M. Dees will suffer irreparable harm to their property (by the drainage of the pond created thereon) and therefore they have an interest in this proceedings and are essential parties thereto.

On 10 December 1971, the Chancellor entered his decree. He found that Baker Creek is a natural water course draining the lands of the complainants, and others; that a dam was constructed across Baker Creek on respondent's land which has caused a considerable amount of water to be impounded on the property of respondent, and upon the property of A. L. Dees and M. Dees, who are not parties to this suit; that the backing up of the water has created a potential health problem; that respondent has refused to remove the dam on his property at complainants' request; that based on the testimony of District Forester Roy Price, which the court believed, the destruction of the dam or dams alone will not alleviate the flooding problem, and the most feasible method of returning Baker Creek to its natural bounds would be to lower the water level of the water south of the dam located on respondent's property, accompanied by trapping and relocation of a portion of the beaver colony. The Chancellor further stated in his findings:

"The Court being further of the opinion that Respondent has no legal liability to remove the obstruction to said stream formed by the beaver dam, and that Complainants' prayer for relief that Respondent be ordered to remove the dam located on his property should be denied but that Complainants have shown by their evidence and testimony a right to equitable relief."

The Chancellor thereupon ordered, adjudged and decreed:

1. That the plea in abatement be denied.

2. That the respondent is ordered to permit the complainants, their servants, agents, or employees to enter upon the triangular portion of his property north of Dawes road, at a reasonable time within 60 days from the date of the decree, for the purpose of inserting, at their own expense, metal pipes as may be required to lower the water level south of said dam to a level of not more than two feet below the present level, and if the drainage of complainants' land is not so accomplished, then upon proper petition and proof, the complainants shall have the right to enter upon said premises for the purpose of removing said dam.

It was further ordered that all parties take whatever steps were necessary to reduce the size of the beaver colony, including trapping or killing the beavers as authorized by Act No. 242 of the 1971 Regular Session of the Alabama Legislature.

Thereafter, on 4 February 1972, apparently ex mero motu, the Chancellor amended his decree of 10 December 1971, by allowing the complainants an additional 60 days in which to attempt to lower the water level behind the dam.

On 17 April 1972, the complainants filed a motion to modify the original decree. In support of this motion, the complainants asserted that they had attempted to secure the services of the Mobile County Road Department to lower the dam (water level) and the respondent had agreed to permit the County Road Department to go on his premises for the purpose of lowering the water level, but before doing so he required that the complainants sign a letter "confirming" that once the drains were installed no further efforts to destroy the dam were to be made. The complainants asserted that such requirement was an unreasonable limitation upon their efforts to lower the water level since the order of the court provided that if the attempted lowering by pipes was not successful the court, upon proper petition, would give the complainants the right to enter upon respondent's premises for the purpose of removing the dam. The motion carried a certificate of counsel for complainants that on 14 April 1972, a copy of the motion had been served on counsel for all parties by mailing, etc.

On 7 June 1972, the Chancellor, after a hearing, entered a decree modifying his original decree of 10 December 1972. In the modification, the Chancellor ordered, adjudged and decreed that the respondent permit the complainants to enter upon the triangular portion of his land for the purpose of removing the beaver dam located thereon at complainants' expense. It was further ordered that the complainants should be liable to the respondent for any damages to respondent's land caused by removal of the dam, and costs were taxed against the complainants.

The respondent duly filed an application for a rehearing and to set aside the modified decree. The basis of the application was that the court had lost jurisdiction of the cause at the time of the attempted modification, and that the modification was not supported by the evidence presented in support thereof. This application for rehearing was denied and the costs taxed against the respondent.

The respondent gave notice of appeal from the modified decree of 7 June 1972, which empowered the complainants to enter upon the property of the respondent for the purpose of destroying the beaver dam, "and from all other matters in the premises." Thereafter an appeal was perfected to this court.

Appellant (respondent below) has properly joined for argument assignments of error Nos. 5 and 7. These assignments are to the effect that the Chancellor erred in his attempted modification of the original decree in that more than thirty days had elapsed since the entry of the original decree.

Argument of counsel for appellant in support of assignments of error Nos. 5 and 7, would equate the modification of the decree to altering a final decree after thirty days has elapsed from the date on which it was entered.

■ Equity decrees may be partly final and partly interlocutory. If there is a decree directing further proceeding under the direction of the court, such decree is interlocutory. In the aspect of further contemplated proceedings the cause remains in fieri. Newton v. Ware, 271 Ala. 444, 124 So.2d 664.

The thirty day limit of Section 119, Title 13, Code of Alabama 1940, applies only to final decrees.

While Equity Rule 65, and Section 119, Title 13, Code of Alabama 1940, provide that a court loses power over a decree after the lapse of thirty days in the absence of any application for rehearing, such provisions apply to final decrees and not to interlocutory decrees. Carter v. Mitchell, 225 Ala. 287, 142 So. 514; Sawyer v. Edwards, 200 Ala. 26, 75 So. 338.

In Sawyer v. Edwards, supra, it was stated:

"* * * So long as the ultimate relief remains in the keeping of the court, it has always been the rule that the court might recast its interlocutory decrees—that is, decrees not final within the meaning of the definition of a final decree first stated in the exerpt from Ex parte Elyton Land Co., supra—to meet the plain requirements of justice. * *"

It is to be noted that the Chancellor specifically provided in his original decree that "if drainage be not accomplished by said overflow pipes * * * upon proper petition and proof of same to this Court Complainants shall have the right to enter said premises for the purpose of removing said dam."

We think it clear that by the above provision the court retained the power of providing the ultimate relief sought by the complainants, i. e., the drainage of the water backed up on their property by the beaver dam.

The removal of the dam would give, at least presently, the ultimate relief sought. While under the testimony of Mr. Price, we are uncertain as to the permanency of this relief, that is that the beavers might not restore the dam, this is a matter depending upon future developments.

We hold that the Chancellor did have the power to recast his decree of 10 December 1971, to empower the complainants to destroy the dam under the conditions specified. Particularly is this true in view of respondent's attempt to limit complainant's efforts to a one time attempt. Such limitation was contrary to the original decree which specifically gave the complainants the right to destroy the dam if the attempt to lower the level of backwater from the dam proved inefficacious.

Appellant's assignment of error No. 4 asserts error in the action of the court in overruling appellant's plea in abatement.

It is the contention of the appellant that the testimony of Mrs. Marguriette Davis shows that part of the beaver dam was upon the land of the Dees, and for this reason the Dees must be considered as essential parties in this proceedings. We do not agree that Mrs. Davis' testimony establishes that a part of the beaver dam was on the Dees' property.

Repeatedly during her examination, Mrs. Davis testified that the beaver dam was on Roberts' land, as shown by the following excerpts from the record:

"Q. And do you—in your knowledge, where is the dam located. On whose property?

"A. It's located just within the line of Mr. James Roberts.

* * * * * *

"Q. Has he always stated that it [dam] was on his property?

"A. Yes.

* * * * * *

"Q. And the part [of the dam] that's across the stream is on Mr. Roberts' land?

"A. Yes.

* * * * * *

"Q. The Court: What you are saying is that all this dam is on Mr. Roberts' property?

"A. Yessir, this is his property line right here."

The record shows that at the opening of the hearing below counsel for respondent had drawn a rough sketch on a blackboard

of the area in question. At one time during her testimony as shown above, and prior to the question by the court, the record shows:

"Q. As a matter of fact, if we look at this sketch over here drawn by the gentleman, the dam is in this little triangle south of Dawes Road and is not on or is it on any of Mr. Dees' property?

"A. Yes, it crosses just the corner of Mr. Dees' property and of course, the water is overflown on just a number of acreage now."

A careful reading of Mrs. Davis' testimony shows that it was in reference to an unidentified sketch not shown in the record. Her nebulous answer is not of sufficient certainty to overcome her clear and positive answer as to the location of the dam.

Counsel for appellant further argues that since a large pond of water was created on the property of the Dees by the erection of the beaver dam, the Dees have gained an interest in the maintenance of such pond, and in this light should be considered as essential parties.

■ The fallacy of this argument is that a third party cannot be deemed to acquire an interest in the maintenance of a nuisance injurious to another party merely because an abatement of the nuisance might affect in some way the property of such third party.

■ It is a legal right of every riparian proprietor to have a natural stream flow through his land in its natural channel, without obstruction or alteration even in its natural level, Wright & Rice v. Moore, et al., 38 Ala. 593, and any obstruction resulting in the unnatural enlargement of a stream to the injury of an upper proprietor gives to the upper proprietor a right of action. Gulf States Steel Co. v. Law, 224 Ala. 667, 141 So. 641.

■ Further, to be an essential party in a legal proceeding in whose absence a court will not proceed to a final decree, one must have a material interest in the issue which will necessarily be affected by the decree. Hodge v. Joy, 207 Ala. 198, 92 So. 171.

In Hodge v. Joy, supra, the court quoted the following from Story's Eq. Pleading, 10th Ed. p. 75, which we think applicable to the point now being considered as to who are interested parties:

"* * * It is not all persons who have an interest in the subject matter of the suit, but, in general, those only who have an interest in the object of the suit, who are ordinarily required to be made parties."

■ The issue in the present suit, and the object thereof, was the abatement of a nuisance injurious to the complainants resulting from a beaver dam on the land of the respondent Roberts. The complainants and the respondent were the parties having a legitimate interest in this issue.

We hold that the Chancellor did not err in denying respondent's plea in abatement. We conclude, therefore, that assignment of error No. 4 is without merit.

Appellant's assignment of error No. 2 is to the effect that the court erred in overruling respondent's demurrer to that aspect of the complaint charging respondent with negligence.

■ The complaint charged that the respondent was negligently maintaining or suffering the dam to be on his property (paragraphs 7 and 8). Since the Chancellor found that respondent "has no legal liability to remove the dam" and refused to order the respondent to remove the dam, but only ordered that complainants be permitted to enter upon respondent's land for the purpose of removing the dam, no error probably injurious to any substantial right of the respondent could have resulted from this ruling. Sup.Ct. Rule 45.

Assignment of error No. 3 charges error because of the action of the court in overruling respondent's demurrer to that aspect of the bill alleging a nuisance.

Section 1081, Title 7, Code of Alabama 1940, defines a nuisance as follows:

"A nuisance is anything that worketh hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful does not keep it from being a nuisance. The inconvenience complained of must not be fanciful, or such as would affect only one of a fastidious taste, but it should be such as would affect an ordinary reasonable man."

■ Clearly under the evidence the complainants were hurt and damaged by the flooding of their lands resulting from the beaver dam. The court found that the complainants, by their evidence, showed a right to equitable relief. We agree.

■ Further, the ruling of the Chancellor on the demurrer was general, merely overruling the demurrer. When demurrers are addressed to the bill as a whole and to specific aspects thereof, but the ruling of the Chancellor is general, such ruling constitutes only a ruling on the bill as a whole, and only those argued grounds going to the bill as a whole will be considered. Rowe v. Rowe, 256 Ala. 491, 58 So. 2d 749; Adams v. Woods, 263 Ala. 381, 82 So.2d 531; City of Mobile v. Wooley, 278 Ala. 652, 180 So.2d 251.

■ In testing the general equity of a bill, the court considers the substance of the allegations, not the form of the bill, nor the manner of stating the facts, nor the specific relief prayed for, and all amendable defects are treated as amended. A general demurrer is properly overruled if the bill contains any equity. Cherry Investment Co. v. Folsom, 273 Ala. 575, 143 So.2d 181, and cases cited.

Having determined that the complainants were entitled to equitable relief, the Chancellor molded his decree so as to give the complainants relief, but without infringing improperly on any rights of the respondent. The decree is due to be affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, MADDOX and FAULKNER, JJ., concur.