# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-CA-00342-SCT

*ILLINOIS CENTRAL RAILROAD COMPANY*

*v.*

*THOMAS W. WATKINS, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 2/22/93 |
| TRIAL JUDGE: | HON. GRAY EVANS |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GLENN F. BECKHAM |
| | RICHARD BENZ, JR. |
| ATTORNEY FOR APPELLEE: | PAT M. BARRETT, JR. |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 3/14/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/4/96 |

**BEFORE PRATHER, P.J., PITTMAN AND SMITH, JJ.**

**PITTMAN, JUSTICE, FOR THE COURT:**

## I.

¶1. Illinois Central Railroad Company (hereinafter "Illinois Central") appeals a jury's award of damages in favor of landowner Thomas Watkins based on Illinois Central's negligence. Specifically, the jury found Illinois Central to be negligent in its maintenance of a culvert beneath one of its track beds, resulting in damages to Watkins' crops. The premise of Illinois Central's appeal is that they cannot be responsible for the acts of beavers on their property.

## II.

¶2. Watkins owned land in Holmes County. Illinois Central owned a portion of land running through Watkins' property upon which was a railroad track supported by an embankment. A culvert was constructed through the embankment to allow surface water to flow through. This formerly was a natural drain. Watkins' complaint alleged that the culvert under the track began "stopping up" around 1986 as a result of Illinois Central's negligent maintenance of the property. Beavers built dams consisting of sticks and mud which obstructed the flow of surface runoff water through the culvert, pooling the water on Watkins' property. Twice, Watkins notified Illinois Central of the blockage. Twice, Illinois Central cleared the blockage so the water would flow through the culvert. In the fall of 1991, Watkins hired a beaver trapper;

the obstruction problems stopped soon after this. However, the earlier obstructions caused water to stand, damaging crops and otherwise interfering with Watkins' farming operations from the spring of 1986 through the end of 1991. Watkins sued Illinois Central for monetary damages in the amount of $35,000 on the theory that it negligently maintained its property. The jury found for Watkins and awarded him $15,000 in damages.

¶3. Illinois Central's main contention is that it cannot be liable for the obstruction created by the beavers under any correct instruction of the law pursuant to the facts of this case. It argues that the lower court erred by failing to grant an instruction to this effect and denying Illinois Central's motion for judgment notwithstanding the verdict. Illinois Central also contends that the lower court erred in granting jury instruction P-2, which stated that if the jury found that Illinois Central allowed beaver dams in the culvert which obstructed the flow of surface water, then it was negligent in doing so. Furthermore, Illinois Central maintains that this instruction basically holds them strictly liable.

### III.

¶4. Illinois Central cites authority from another jurisdiction that in effect states that no private individual can be held liable for the trespass of animals which are by nature "wild." *Seaboard Air Line R. Co. v. Richmond-Petersburg Turnpike Authority,* 202 Va. 1029, 121 S.E.2d 499 (1961) (bridge owner not liable for damages to a parking lot underneath the bridge caused by pigeons roosting on the bridge). Notwithstanding *Seaboard,* Illinois Central has a duty to maintain its roadbed including its culvert, so as not to constrict the natural flow of surface waters from property of others. *Yazoo & M.V.R. Co. v. Scott,* 110 Miss. 443, 70 So. 459, 460 (1916), *Sinai v. Louisville, N.O. & T.R. Co.,* 71 Miss. 547, 14 So. 87 (1893). In *Yazoo & M.V.R. Co. v. Scott,* Scott was the lessee of a plantation through which Illinois Central's roadbed ran. Scott instituted an action for improper construction and maintenance of the roadbed. The damage was due in part to the accumulation under the track of gravel, dirt and other debris, and this accumulation obstructed the flow of water. Illinois Central contended, among other things, that it was not liable for anything washed on the right of way by the rains or for the natural increase of elevation. This Court held then, and holds today as well, that Illinois Central must maintain its roadbed with sufficient openings to permit the flow of surface water.

¶5. Illinois Central has misconstrued Watkins' case. Watkins did not contend that Illinois Central was liable simply for the activity of the beavers. His theory of negligence is that Illinois Central breached its duty to maintain its property, that it knew of the beaver obstructions, that it twice unstopped the culvert, and that it failed in its duty of maintenance by allowing the culvert to become stopped up. Jury instruction P-2, given by the lower court, clearly manifests the negligence theory alleged by Watkins. Furthermore, the instruction absolving Illinois Central of liability for the acts of wild animals was properly denied. This is not a wild animal case. The wild animal defense amounts to a smokescreen covering the failure of Illinois Central in its duty to maintain its roadbed. Look at the dispute between Watkins and Illinois Central Railroad as a race: Watkins began the race at the culvert; Illinois Central would begin the race at the beaver dam. The race starting place is at the railroad bed and culvert, not further down the maintenance track.

¶6. Moreover, Illinois Central contends that our opinion in *Georgia Pacific Corp. v. Armstrong,* 451 So.2d 201 (Miss.1984), excuses it from liability for failing to maintain its roadbed. Armstrong sued a lower landowner and a timber company alleging that logging operations on the lower property impeded the natural flow of water. This Court held that an upper riparian landowner may secure judicial relief if a lower riparian

landowner obstructs the flow of a stream or watercourse thereby causing the former's lands to flood. The burden is upon the plaintiff to show that the acts of the lower riparian landowner were a substantial contributing cause of the damages he suffered, and redress for this situation may be in the form of damages and an injunction. *Id.* at 205.

¶7. Illinois Central maintains that the importance of this opinion was the Court's consideration of Armstrong's entitlement to equitable relief. The Court ordered the defendants "to remove only those obstructions from the canal that were cut with a saw or were used to build the bridges ... and the silt or other obstructions that have accumulated thereon." *Id.* at 207. Furthermore, the Court said:

> The evidence shows that prior to the timber cutting operation, the condition of the canal ... was in some state of disrepair due to beaver activity in the area and natural erosion. The injunction does not require Georgia Pacific to remedy the damage done to the canal by natural causes.

*Id.* at 207.

¶8. We find *Armstrong* not to be in conflict with the case sub judice. In *Armstrong* we affirmed the chancellor's finding that the defendants' logging operation was the sole proximate cause of Armstrong's inadequate drainage. The injunction tracks that finding. It is not a ruling that landowners are not responsible for natural causes. To hold as such in the case at hand would arguably absolve railroads from their duty to maintain roadbeds if, for instance, a log floated into the culvert and obstructed the flow of water. In essence, such a holding would severely curtail the maintenance duties of a railroad.

¶9. Illinois Central also implores us to consider the case of *Roberts v. Brewer,* 290 Ala. 329, 276 So.2d 574 (1973). The complainants filed a bill in equity court to abate the nuisance created due to a beaver dam on Roberts' property that obstructed drainage and caused flooding of their lands. The Supreme Court of Alabama affirmed the chancellor's order which denied monetary damages and a portion of the equitable relief sought by the plaintiff. The chancellor found that the defendant "has no legal liability to remove the obstruction to said stream formed by the beaver dam, and that Complainants' prayer for relief that Respondent be ordered to remove the dam located on his property should be denied, but that Complainants have shown by their evidence and testimony a right to equitable relief." *Id.* at 579. The chancellor's equitable relief consisted of an order that the plaintiff be permitted to enter upon respondent's land for the purpose of removing the beaver dam. *Id.* at 582. Illinois Central contends that such relief is the proper remedy in the case at bar. Such a remedy may well cause more problems than it solves and more litigation than anyone would desire.

¶10. We decline to apply this holding in a case where a railroad has a duty to maintain its culvert so that the flow of water is not obstructed. In fact, we note the Alabama case of *Tennessee, A. & G. Ry. v. Cardon,* 27 Ala.App. 585, 177 So. 171, 172, *cert. denied,* 235 Ala. 53, 177 So. 173 (1937), as being more applicable to Illinois Central's situation. In *Cardon,* the court found that a cause of action existed against the railroad when its culverts became clogged, and the railroad, having notice of such condition, allowed it to remain in that condition. *Id.* at 172.

¶11. Illinois Central had a duty to maintain its culverts. The evidence shows that mud and sticks obstructed the culvert, Illinois Central knew of the condition and allowed it to remain. A jury could find that Illinois Central was negligent in maintaining its property from these facts. Jury instruction P-2 adequately addresses this theory. Furthermore, Illinois Central's peremptory instructions stating Illinois Central's lack of liability for

the acts of wild animals were properly denied. The judgment of the lower court is affirmed.

¶12. AFFIRMED.

**DAN M. LEE, C.J., PRATHER and SULLIVAN, P.JJ., and BANKS, McRAE, JAMES L. ROBERTS, Jr., SMITH and MILLS, JJ., concur.**