ON WRIT OF CERTIORARI

LAMAR, Justice,
for the Court:
¶ 1. Tom and Consandra Christmas own property neighboring an alligator-infested, waste-disposal site owned by Exxon. They sued Exxon, claiming the alligator infestation was a nuisance. The circuit court granted summary judgment in favor of Exxon, based on the statute of limitations and the prior-trespass doctrine. The Court of Appeals reversed and remanded. We find that Exxon is entitled to summary *125 judgment, but for different reasons than those found by the circuit court.
FACTS AND PROCEDURAL HISTORY
¶ 2. A waste-disposal site has been located between the towns of Centerville and Woodville in rural Wilkinson County for decades. During the 1980s, 1990s, and early 2000s, the site was owned by Rogers Rental & Landfill Company.[1] From 1984 until 2001, Exxon was the site’s only customer and was involved in the site’s operations. The extent of Exxon’s involvement is disputed. In the early 1980s, Cliff Rogers, the owner of Rogers Rental & Landfill Company,. allegedly brought alligators to the site from Louisiana. On July 6, 2001, Exxon purchased the site from Rogers. At Exxon’s request, the Mississippi Department of Wildlife, Fisheries, and Parks surveyed Exxon’s property on July 2, 2007, and reported the presence of eighty-four alligators. The Department noted that this was “a high density of alligators to exist in the wild.” Pursuant to a request from Exxon, the Department removed several alligators from Exxon’s property in July 2008.
¶3. On December 3, 2003, Tom and Consandra Christmas purchased a thirty-five-acre tract of land that neighbored Exxon’s property.[2] Before they completed their purchase, their real estate agent, Alan Ryan, told them that his horse had been injured on the property and that he suspected an alligator did it. The Christmases also saw a few alligators on their property from 2003 to 2007. However, they claim they did not know that their property adjoined an alligator-infested, waste-disposal site until 2007 when Mr. Christmas went onto Exxon’s property to retrieve one of his dogs.
¶4. The Christmases sued Exxon on August 11, 2008, alleging that the alligator infestation constituted a nuisance.[3] They did not seek abatement of the nuisance. Rather, they sought monetary damages. Exxon moved for summary judgment, claiming that the statute of limitations had expired, that the Christmases had no recoverable damages, and that it could not be held liable for the presence of wild alligators on its property. The Christmases countered by alleging that the statute of limitations was tolled by the discovery rule, that they could recover for a decrease in their property’s value, and that Exxon was responsible for the alligator infestation. The circuit court agreed with Exxon on the statute-of-limitations and damages issues and granted summary judgment in Exxon’s favor.
¶ 5. On appeal, the Court of Appeals reversed and remanded, finding that there was a factual dispute as to when the Christmases learned of the alligator infestation and that the Christmases’ knowledge affected the running of the statute of limitations and the sustainability of their property-damage claim.[4] In its petition for certiorari, Exxon argued that: 1) the statute of limitations was not tolled by the discovery rule and had run before the Christmases filed suit; 2) the prior-trespass doctrine barred the Christmases from *126 recovering for the alligator infestation’s effect on their property’s value; and 3) it cannot be liable for the presence of wild alligators on its property.
STANDARD OF REVIEW
¶ 6. This Court reviews a grant of summary judgment de novo.[5] Summary judgment is appropriate if “there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.”[6] A summary-judgment decision should be based on the-pleadings, depositions, interrogatory responses, admissions, and any affidavits, and all evidence must be viewed in the light most favorable to the nonmoving party.[7]
LAW AND ANALYSIS
¶ 7. The Christmases assert one cause of action against Exxon: nuisance. They allege “[f]or an extended period of time, [Exxon’s] property has been infested with large numbers of alligators. The alligators located on [Exxon’s] property are seen frequently near or on the Plaintiffs’ property. Such infestation of alligators constitutes a nuisance.”
A private nuisance is a nontrespassory invasion of another’s interest in the use and enjoyment of his property. One landowner may not use his land so as to unreasonably annoy, inconvenience, or harm others.... One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another’s interest in the private use and enjoyment of land, and the invasion is either (a) intentional and unreasonable, or (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.[8]
We find the dispositive issue in this case is whether the presence of wild alligators can constitute a private nuisance. Although raised, this issue was not addressed by the circuit court or the Court of Appeals, both of which decided this case based on the statute of limitations and the prior-trespass doctrine.[9]
¶ 8. At the outset, we find it important to clarify that this is a wild-alligator case. There is no evidence that Exxon brought the alligators to its property or that it is restraining the alligators in any way. The Christmases claim that alligators were brought to what is now Exxon’s property in the early 1980s. The Christmases’ accusations are based on the deposition testimony and affidavit of Frederick Coleman, a former employee of Rogers Rental & Landfill Company. The pertinent part of Coleman’s affidavit states:
During my employment at the waste site, I heard and took part in numerous conversations with Exxon employees ... regarding the alligators that populated the Exxon waste site. It was stated repeatedly by Exxon employees ... that *127 the alligators had been brought up from Louisiana and introduced to the Exxon waste site.
Despite Coleman’s references to “the Exxon waste site,” it is undisputed that the property was owned by the Rogers family, not Exxon, for the duration of Coleman’s employment. According to Coleman, the original alligators allegedly were brought to the property before Coleman began his employment there in 1984. Additionally, Coleman did not identify Exxon as the party responsible for bringing the alligators to the site. In fact, Mr. Christmas claimed Cliff Rogers, the owner of Rogers Rental & Landfill Company in the 1980s, was responsible for bringing the alligators to the property. Regardless of Coleman’s testimony, there is no evidence that the alligators currently on Exxon’s property are descended from the alligators allegedly brought to the property by Cliff Rogers. Moreover, the Christmases fail to explain how Exxon can be held liable for Rogers’s behavior, which occurred decades before Exxon purchased the property.
¶ 9. The Christmases’ wild-alligator-nuisance claim is a case of first impression in Mississippi. However, other jurisdictions have held that private persons cannot be held liable for the acts of wild animals on their property that are not reduced to possession. See Sickman v. United States, 184 F.2d 616, 618 (7th Cir.1950) (stating “a private person could not be held liable for the trespasses of animals which are ferae naturae, and which have not been reduced to possession, but which exist in a state of nature”); Roberts v. Brewer, 290 Ala. 329, 276 So.2d 574, 582 (1973). We agree.
¶ 10. Alligators are a protected species and are managed exclusively by the Mississippi Department of Wildlife, Fisheries, and Parks.[10] Our Legislature has declared it illegal “for any person to disturb an alligator nest; to buy, sell, take or possess alligator eggs; to buy, sell, hunt, kill, catch, chase, or possess alligators or parts thereof except under permit from the Department.”[11] Additionally, the Department narrowly defines what constitutes a “nuisance alligator”[12] and strictly regulates the capture and removal of the same.[13] Consequently, allowing wild alligators to constitute a private nuisance would subject landowners to liability for something over which they have no control. Exxon responded in the only legally permissible way it could to the Christmases’ alligator complaints: it called the Mississippi Department of Wildlife, Fisheries, and Parks and asked for the alligator population on its property to be reduced. Therefore, we hold that the presence of *128 wild alligators “not reduced to possession, but which exist in a state of nature” cannot constitute a private nuisance for which a land owner can be held liable.[14] Exxon is entitled to summary judgment.
CONCLUSION
¶ 11. Tom and Consandra Christmas own property neighboring an alligator-infested, waste-disposal site owned by Exxon. They sued Exxon for nuisance, claiming the alligator infestation decreased the value of their property. The circuit court granted summary judgment in favor of Exxon, finding that the statute of limitations had expired and that the Christmases had no recoverable damages. The Court of Appeals reversed and remanded based on a factual dispute as to when the Christmases had learned of the alligator infestation. We find Exxon is entitled to summary judgment because it cannot be held liable for the presence of wild alligators on its property. For these reasons, we reverse the Court of Appeals’ judgment and reinstate and affirm the circuit court’s grant of summary judgment in favor of Exxon.
¶ 12. THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE CIRCUIT COURT OF WILKINSON COUNTY IS REINSTATED AND AFFIRMED.
WALLER, C.J., DICKINSON, P.J., PIERCE AND COLEMAN, JJ., CONCUR. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., KITCHENS AND KING, JJ.

. The site stopped accepting waste in 1997.

. The Christmases did not live on their property until approximately August 2007. They moved from their property in February 2008.

. The Christmases also accused Exxon of chemically contaminating their property. They abandoned their contamination claim on appeal.

.Christmas v. Exxon Mobil Corp., 138 So.3d 168, 173-74, 2013 WL 2302708, *4 (Miss.Ct.App. May 28, 2013). The Court of Appeals did not address Exxon's liability for the alligators. Id.

. Anglado v. Leaf River Forest Products, Inc., 716 So.2d 543, 547 (Miss.1998).

. Id.; see Miss. R. Civ. P. 56.

. Prescott v. Leaf River Forest Products, Inc., 740 So.2d 301, 308-09 (Miss.1999).

. Leaf River Forest Products, Inc. v. Ferguson, 662 So.2d 648, 662 (Miss.1995) (internal quotations and citations omitted).

.The Court of Appeals stated that Exxon did not raise this issue before the trial court and therefore held it could not affirm the circuit court’s grant of summary judgment on this ground. Christmas, 138 So.3d at 171-72, 2013 WL 2302708, at *2 (citing Byrd v. Woods, 90 So.3d 666, 671 (Miss.Ct.App. 2012)). Exxon did timely raise this issue before the circuit court, although the circuit court did not address it. See Briggs v. Benjamin, 467 So.2d 932, 934 (Miss.1985).

. The Mississippi Commission on Wildlife, Fisheries, and Parks is created by Section 49-4-4 of the Mississippi Code. Miss.Code Ann. § 49-4-4 (Rev.2012). The powers of the Mississippi Department of Wildlife, Fisheries, and Parks are set out in Section 49-4-9 of the Mississippi Code. Miss.Code Ann. § 49-4-9 (Rev.2012).

. Miss. Admin. Code 40-2:5.l.C.l; see also Miss.Code Ann. § 49-7-47 (Rev.2012); Miss. Code Ann. § 49-7-141 (Rev.2012) (subjecting violators to a fine of $2,000-$5,000 and a mandatory five-day jail sentence).

. Generally, a nuisance alligator is one that has shown aggressive behavior, one that hangs around seeking handouts, or one that is in a place it has absolutely no business being, such as a swimming pool or garage or in the middle of the highway. [Mississippi Department of Wildlife, Fisheries, and Parks] also will remove unwanted alligators from private ponds used for aquaculture or recreation. An alligator that has eaten pets or livestock is generally considered to be a nuisance gator.
“The Recovery of the American Alligator in Mississippi,” https://www.mdwfp.com/ wildlife-hunting/alligator-program/the-recovery-of-theamerican-alligator-in-mississippi.aspx (last visited May 14, 2014).

.Miss. Admin. Code 40-2:5.1.

. Sickman, 184 F.2d at 618.